**Virgil Dean ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 271–84.**

Court of Criminal Appeals of Texas, En banc.

Dec. 4, 1985.

Bob Gilbert, McKinney, Danny D. Burns (court appointed), John H. Read, III, Grand Prairie, for appellant.

H. Ownby, Dist. Atty. and Roger V. Dickey, Randall A. Blake and Amanda Green, Asst. Dist. Attys., McKinney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of aggravated rape. The jury assessed his punishment at 30 years' imprisonment.

On appeal appellant advanced five grounds of error. The first three grounds of error read:

"The trial court erred in not allowing testimony of the prosecutrix's prior sexual activity to refute the misleading testimony elicited by the State.

"The trial court erred in excluding evidence of the prosecutrix's prior sexual activity which evidence was material to the defensive theory of consent.

"The trial court erred in limiting appellant's right to fully cross-examine the prosecutrix on her prior sexual activity after she left a false impression with the jury."

The Dallas Court of Appeals affirmed the conviction. *Allen v. State*, 666 S.W.2d 245 (Tex.App.-Dallas 1984). The Court of Appeals held that under V.T.C.A., Penal Code, § 21.13, evidence of prior sexual activity was not evidence of the prosecutrix's consent to the relationship with appellant, citing *Young v. State*, 547 S.W.2d 23, 25 (Tex.Cr.App.1977); *Wilson v. State*, 548 S.W.2d 51, 52 (Tex.Cr.App.1977). Further, the Court of Appeals found the evidence was properly excluded when offered for the purpose of impeaching the prosecutrix's credibility.[1]

Three of appellant's grounds of review in his petition for discretionary review correspond to aforesaid grounds of error. Concluding that the Court of Appeals reached the correct result as to inadmissibility of the evidence on the issue of consent, we granted appellant's said petition to determine the correctness of the Court of Appeals' holding as to inadmissibility of the evidence for the purpose of impeaching the credibility of the prosecutrix. Thus, we shall consider appellant's first and third grounds of review.

Prior to trial the court granted the State's motion in limine to prohibit the appellant from inquiring into the prosecutrix's sexual conduct other than that involved in the alleged offense without an in-camera hearing as contemplated by V.T.C.A., Penal Code, § 21.13, then in effect.

The prosecutrix was the State's first witness. The 17-year-old prosecutrix testified that about 9:40 p.m. on the night of February 1, 1982, she left her place of employment, a department store in the Collin Creek Mall in Plano. As she reached her car in the mall parking lot, appellant drove up in a pickup truck. She did not know him. At gunpoint he abducted the prosecutrix and drove to a spot in rural Collin County, forcing her to remove her clothing along the way. There the prosecutrix related the appellant raped[2] her and threatened to "find her" if she told anyone what had happened. He drove her back to the mall parking lot, where her father was waiting for her near her car. Appellant released the prosecutrix nearby. She stated later that night she was examined at the hospital and made a report to the police.

Early on, the prosecutrix testified on direct examination, that appellant told her he would take her home after she made love to him. She refused and asked to be taken home because her parents would worry if she wasn't home by 10 p.m. He suggested

---

1. The Court of Appeals wrote:

    "Appellant also contends that the evidence should have been admitted for the purpose of impeaching complainant's credibility. Subsection (a) of Sec. 21.13 allows admission of evidence of complainant's prior sexual activity 'only if, and only to the extent that, the judge finds that the evidence is material to a fact at issue in the case.' Subsection (d) of Sec. 21.13 states that '[t]his section does not limit the right of the state or the accused to impeach credibility by showing prior felony conviction....' Thus, the statute does not contemplate the admission of evidence of prior sexual conduct for impeachment purposes unless the evidence is in the form of a prior felony conviction."

2. The prosecutrix testified that appellant's penis penetrated her vagina, but she did not believe he had "any kind of an erection" or reached a climax.

she tell her parents she had gone for a drink with friends. She told him she was under age and couldn't drink. The record then reflects:

"Q Did he ask you any question after that, after he suggested you tell your parents you had gone for a drink?

"A I don't recall.

"Q "Did he say anything else to you at that point?

"A Yes, he did.

"Q What else did he say? .

"A He asked me if I was a virgin.

"Q Did you answer his question?

"A Yes, I did.

"Q What did you tell him?

"A I told him, No.

"Q Why did you tell him that?

"A Because I thought if I told him, Yes, I was, that he would certainly want more.

"Q Were you frightened at that point?

"A Yes, I was.

"Q What was he doing with the gun as you were driving north on Parker?

"A He had it pointed toward me."

Shortly after cross-examination commenced the court conducted an in-camera hearing as contemplated by V.T.C.A., Penal Code, § 21.13(b). At such hearing the prosecutrix testified she was not a virgin at the time of the alleged offense, that she had an older boyfriend (naming him) who attended Baylor University with whom she had had sexual relations, and they last had sexual intercourse approximately two weeks before the alleged offense. The prosecutrix related after the alleged offense she told the examining doctor she was not a virgin before the offense, but she had not yet told her father, who was a strong disciplinarian. At the conclusion of the hearing, the court denied appellant the opportunity to elicit from the prosecutrix in the jury's presence the foregoing evidence. From this action of the court springs the grounds of review.

The State in its case-in-chief also called the prosecutrix's father, who testified as to his actions on the night in question. From his testimony it is clear he was a strong disciplinarian. The State further offered evidence that when appellant was arrested the next day a .22 caliber revolver was found in his pickup truck. Appellant's extrajudicial confession was introduced in which he related that he ordered the prosecutrix, whom he did not know, to get into his truck as he "had a gun," and that she did what he asked of her because she was afraid of guns. He could not remember whether "we completed sexual intercourse or not."

Appellant offered evidence from one witness that he and appellant each had 12 or 13 beers between noon and 6 p.m. on the day in question. Appellant's wife testified when she saw him at 7:30 p.m. he was intoxicated and she would not go to a club in Dallas with him for that reason. According to appellant's testimony, he had had about 22 beers and purchased another six-pack sometime before the alleged offense. He testified the prosecutrix voluntarily entered his truck after he offered her a drink. He stated when the prosecutrix got in the truck his gun and holster were on the seat where it had been since the previous weekend, when he had been hunting, that he showed it to her and placed it under the seat. He claimed he was drunk, and did not achieve an erection and the sexual act was not completed but that the prosecutrix had consented to sexual advances. Appellant drove her back to the mall parking lot where he saw a man standing by the prosecutrix's car and she asked him to suggest some excuse to give her father for being out with him (appellant).

Appellant related that during their conversations that night the prosecutrix told him she had a boyfriend who went to Baylor University. He did not relate whether there was any discussion about whether the prosecutrix was a virgin. No issue was made of the fact.

The appellant called the examining physician, Dr. Ivan Rovner, who testified he

found no evidence of actual penetration. He found no evidence of trauma, bruising or of lacerations. Further, appellant elicited from the medical witness he did not find any physical evidence of any type of sexual conduct within the recent past. On cross-examination Dr. Rovner testified that it was possible for there to have been penetration of a vagina by the male sexual organ without any physical evidence being left.

Appellant called a co-worker of the prosecutrix who testified she had recently attended a graduation party at a hotel given by the prosecutrix and another girl, that the prosecutrix was there with her boyfriend (giving his name) and the prosecutrix was drinking.

From the court's action under § 21.13 following the in-camera hearing arises appellant's complaint that the prosecutrix left a false impression with the jury and he was thus unable to refute the misleading testimony elicited by the State. Appellant argues that the prosecutrix was not a virgin, had had sexual intercourse with her boyfriend, that her father was still unaware of that fact, and that this demonstrates a motive for her trial testimony. Appellant also argues that a defendant is entitled to the full confrontation and cross-examination of the witnesses against him, Sixth Amendment, United States Constitution, and Article I, § 10, Texas Constitution, and that any statute which prevents such confrontation and cross-examination must fall. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

V.T.C.A., Penal Code, § 21.13, in effect at the time of appellant's trial,[3] read:

"(a) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct may be admitted under Sections 21.02 through 21.05 of this code (rape, aggravated rape, sexual abuse, and aggravated sexual abuse) only if, and only

to the extent that, the judge finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

"(b) If the defendant proposes to ask any question concerning specific instances, opinion evidence, or reputation evidence of the victim's sexual conduct, either by direct examination or cross-examination of any witness, the defendant must inform the court out of the hearing of the jury prior to asking any such question. After this notice, the court shall conduct an in camera hearing, recorded by the court reporter, to determine whether the proposed evidence is admissible under Subsection (a) of this section. The court shall determine what evidence is admissible and shall accordingly limit the questioning. The defendant shall not go outside these limits nor refer to any evidence ruled inadmissible in camera without prior approval of the court without the presence of the jury.

"(c) The court shall seal the record of the in camera hearing required in Subsection (b) of this section for delivery to the appellate court in the event of an appeal.

"(d) This section does not limit the right of the state or the accused to impeach credibility by showing prior felony convictions nor the right of the accused to produce evidence of promiscuous sexual conduct of a child 14 years old or older as a defense to rape of a child, sexual abuse of a child, or indecency with a child. If evidence of a previous felony conviction involving sexual conduct or evidence of promiscuous sexual conduct is admitted, the court shall instruct the jury as to the purpose of the evidence and as to its limited use." [Added by Acts 1975, 64th Leg., p. 477, ch. 203, § 3, eff. Sept. 1, 1975.] (Hereinafter referred to as § 21.13.)

---

**3.** Section 21.13 has since been renumbered as § 22.065 and amended by Acts 1983, 68th Leg., p. 5315, ch. 977, § 4, eff. Sept. 1, 1983. See also

Proposed Rules of Criminal Evidence, Rule 412, Texas Bar Journal, Vol. 48, No. 8, p. 933, September 1985.

Before 1975, Texas had no statute concerning the admissibility of a rape victim's prior sexual conduct. The law concerning the admissibility of such evidence was developed by the courts. In enacting § 21.13, Texas joined Congress and many other states in enacting rape shield laws. See generally Berger, Man's Trial, Woman's Tribulation: Rape Cases In the Courtroom, 77 Colum.L.Rev. 1 (1977); Weddington, Rape Law In Texas: H.B. 284 and the Road to Reform, 4 Am.J.Crim.L. 1 (1975).

In *Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir.1982), the Court wrote:

"The rationale behind these statutes is that evidence of a rape victim's prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of these statutes assert that they encourage victims of sexual assault to report the crimes without fear of having their past sexual history exposed to the public."

There can be little doubt that § 21.13 represents an explicit legislative decision to eliminate trial practices which may have effectually frustrated society's vital interest in the prosecution of sexual crimes.

■ The standard of admissibility of evidence under § 21.13 has two parts. First, the evidence must be material to an issue in the case, and secondly, even if the court finds the evidence is material to an issue in the case, its inflammatory or prejudicial nature must not outweigh its probative value. See and cf. *State v. Herrera*, 92 N.M. 7, 582 P.2d 384 (Ct. of Appeals 1978) (cert. den. 1978).

■ If a defendant claims a victim's past sexual conduct is relevant, it is up to the defendant to make a preliminary showing that the issue is material to an issue in the case. This is not raised by merely asserting that it is so. There must be a showing of a reasonable basis for believing that the past sexual conduct is pertinent. If there is no such showing, questions concerning past sexual conduct are to be excluded. If such a showing of relevancy is made, the balancing test of § 21.13 is to be applied in determining admissibility.

In Baylor Law Review, Vol. 31, p. 317, Rape—Admissibility of Victim's Prior Sexual Conduct: What is the Law in Texas?, it was written:

"Before the enactment of section 21.-13, evidence of prior sexual conduct was admissible to impeach the credibility of the complainant in three instances: to rebut a complainant's testimony, to establish a course of conduct indicating prostitution, and to show felonies and misdemeanors involving moral turpitude. Under section 21.13, evidence of prior sexual conduct should be admissible to rebut testimony of the complainant, however, the testimony must first meet the burden of materiality and superior probative value imposed by section 21.13."

■ Where the balancing test has been met, where the balance inclines toward the accused, Texas trial courts are free and should not hesitate to admit evidence of the victim's prior sexual conduct to attack her credibility, to impeach her, if it does. A reading of § 21.13 demonstrates it was not designed to forever prohibit all evidence of specific instances of the victim's sexual conduct or opinion or reputation evidence of such conduct.[4] If the evidence of the

---

4. There are some cases in which prior sexual conduct may become relevant and its probative value outweigh the detrimental impact of its introduction. See *State v. Johns*, 615 P.2d 1260, 1263–64 (Utah 1980); *Commonwealth v. Joyce*, 382 Mass. 222, 415 N.E.2d 181, 185 (1981); *State v. LaClair*, 121 N.H. 743, 433 A.2d 1326 (1981).

In *State v. LaClair*, supra, the Court wrote: "As we have stated above, *State v. Howard* [121 N.H. 53, 426 A.2d 457 (1981)] established that the protection from undue harassment

afforded to a *prosecutrix* by RSA 632–A6 (Supp.1979) [rape shield statute] must yield to the defendant's right to confront the evidence against him. The sexual activities of a prosecutrix immediately prior to an alleged rape may be a relevant area for cross-examination. *United States v. Kasto*, 584 F.2d 268, 272 (8th Cir.1978); see *State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 29, 545 P.2d 946, 953 (1976) (in banc). This is especially true where, as here, the evidence of prior sexual

victim's sexual conduct as contemplated by the statute becomes material to an issue in the case and meets the balancing test, it is admissible even if it is in the form of impeachment evidence. Further, subsection (d) expressly provides § 21.13 does not limit the right to impeach credibility by showing prior felony convictions nor the right of a defendant to produce evidence of promiscuous sexual conduct of a child 14 years old or older as a defense to rape of a child, sexual abuse of a child or indecency with a child. The Court of Appeals misreads the statute and particularly subsection (d) in arriving at the conclusion that § 21.13 does not contemplate the admission of evidence of prior sexual conduct for impeachment purposes unless the evidence is in the form of a prior felony conviction.

In the instant case the prosecutrix testified that after the abduction at gunpoint, the appellant inquired, among other things, if she was a virgin. She answered him in the negative and explained in her testimony why she did so under the circumstances. She did not assert that at the time she was in fact a virgin. Whether she was or was not a virgin was not material to an issue in the case. Even if the evidence was relevant and material to an issue, its inflammatory or prejudicial nature certainly outweighed its probative value, if any. The appellant failed to establish his right to attack the credibility of the prosecutrix with her prior sexual conduct under the guidelines of § 21.13. The trial court properly excluded the offered testimony under § 21.13.[5]

We must next consider appellant's attack upon § 21.13 as being violative of the Sixth Amendment and Article I, § 10, Texas Constitution.

There have been numerous attacks upon the so-called rape shield statutes as violative of the Sixth Amendment and these generally have been rejected. 1 A.L.R. 4th 283 (1979); *Bell v. Harrison,* supra; Sanford and Bocchino, Rape Shield Laws and Sixth Amendment, 128 V.Pa.L.Rev. 544 (1980); Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum.L.Rev. 1 (1977).

In *North Carolina v. Fortney,* 301 N.C. 31, 269 S.E.2d 110 (N.C.1980), the Supreme Court of North Carolina upheld the constitutionality of that state's rape shield law (G.S., § 8, 58.6). There the court wrote:

"Defendant is mistaken on several grounds. First, there is no constitutional right to ask a witness questions that are irrelevant. *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978); *People v. Blackburn,* 56 Cal.App.3d 685, 128 Cal. Rptr. 864 (1976); *People v. Thompson,* 76 Mich.App. 705, 257 N.W.2d 268 (1977); *Smith v. Commonwealth,* 566 S.W.2d 181 (Ky.App.1978).

"Second, in its impact and application, this statute is primarily procedural and does not alter any of defendant's substantive rights. And third, there are valid policy reasons, aside from relevance questions, which support this statute.

"The sixth amendment of the Constitution, made applicable to state criminal

activities might explain physical injuries of the prosecutrix, *State v. Murphy,* 134 Vt. 106, 111–12, 353 A.2d 346, 350 (1976), or the origin of semen. *State ex rel. Pope v. Superior Court, supra* 113 Ariz. at 29, 545 P.2d at 953; *Pack v. State,* 571 P.2d 241, 245–46 (Wyo.1977). In such cases, however, the defendant must establish through medical evidence that the particular prior sexual activities of the prosecutrix that he desires to raise are relevant to her physical condition. *See State v. Williams,* 18 Wash.App. 398, 402–03, 569 P.2d 1190, 1192–93 (1977). For example, where the defendant, in an attempt to establish that the presence of motile sperm in the prosecutrix's vagina at the time of a medical examination conducted after the alleged rape is not inconsistent with

his denial of intercourse, seeks to introduce evidence of the victim's past sexual activities, he must be able to show through medical evidence that sperm could remain motile from the time of the prior sexual intercourse to the examination conducted after the alleged rape. *Pack v. State, supra* at 245." (Emphasis supplied in view of Judge Miller's opinion.)

5. It must be remembered that our interpretation is only of § 21.13 in effect at the time. See now V.T.C.A., Penal Code, § 22.065 and Rule 412, proposed Texas Rules of Criminal Evidence, Texas Bar Journal, Vol. 48, No. 8, p. 933, September, 1985.

proceedings by *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), guarantees the right of an accused in a criminal trial to be confronted with the witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process, *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 3098 (1973), citing *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972). See also *Davis v. Alaska, supra* 415 U.S. at 321, 94 S.Ct. at 1112–13, 39 L.Ed.2d at 356 (Stewart, J., concurring).

Thus, while a defendant may generally cross-examine to impugn the credibility of a witness, this right is not inviolate. Indeed the Supreme Court has expressly stated that a court has a duty to protect a witness 'from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him.' *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629 (1931) quoted in *Davis v. Alaska, supra,* 415 U.S. at 320, 94 S.Ct. at 1112, 39 L.Ed.2d at 356. Implicit in this statement is the recognition that in such cross-examination, the probative value of any admission is outweighed by its prejudicial effect. The question of the proper scope of cross-examination, therefore, involves resolving the 'tension between the right of confrontation and the State's policy of protecting the witness....' *Davis v. Alaska, supra* at 314, 94 S.Ct. at 1109, 39 L.Ed.2d at 352.... [269 S.E.2d at 112, 113.]

"The idea that *any* previous sexual behavior of a rape victim is per se relevant to a rape proceeding was based on two views of human behavior which no longer withstand the scrutiny of rational investigation....

"This is not to say, however, that evidence of a victim's prior sexual behavior can never be relevant to an issue presented at trial. As we construe its language and permissible application, the rape victim shield law, G.S. 8–58.6, codifies primarily procedural rules and thus does not unduly impinge upon defendant's substantive right to confront his accusing witness. Unlike the situation in *Davis v. Alaska, supra,* where the defendant was totally prevented by an Alaskan witness protection law from cross-examining a witness against him about a fact that would give rise to a reasonable supposition of bias, and unlike the situation in *Chambers v. Mississippi, supra,* again where state law totally prevented a defendant from presenting evidence that another had confessed to the crime charged, G.S. 8–58.6 contains no such total prohibitions. Thus, although statutory, the rape victim shield law is analogous to judge-made rules of evidence which prevent the admission of opinion evidence, hearsay testimony and convictions of very old standing where the probative value of the evidence is outweighed by the possibility of jury prejudice. No one seriously considers that the policy decision not to admit such analogous evidence is on its face a violation of the fifth or sixth amendment ... If any question arises concerning evidence of a victim's prior sexual history, that question may be presented at an *in camera* hearing where opposing counsel may present evidence, cross-examine witnesses and generally attempt to discern the relevance of proffered testimony in the crucible of an adversarial proceeding away from the jury. In summary, then, G.S. 8–58.6 merely contains and channels long-held tenets of relevance by providing a statutory definition of that relevance and by providing a procedure to test that definition within the context of any particular case. Defendant's substantive right to cross-examine is not impermissibly compromised."

While the North Carolina statute is not totally like § 21.13, it is similar in many respects and the language in *Fortney* is here instructive.

■ "Of course rape shield statutes should not be used to exclude highly relevant evidence and violate the defendant's right of confrontation or other constitutional rights." *Bell v. Harrison,* supra, 670 F.2d at p. 658. Courts have a responsibility to protect the victim from questions not within the proper bounds of cross-examination and which are designed only to harrass, annoy or humiliate. See, e.g., *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *State v. Davis,* 269 N.W.2d 434, 438 (Iowa 1978); A.B.A. Standards for Criminal Justice, standards 6–2.2, 6–2.3 (2d ed. 1980). This is part of the thrust of the rape shield laws. "In order to assess the rape shield laws one must ask whether these state interests, as embodied in particular statutory standards applied in specific factual contexts, outweigh the defendant's valued right to meet the prosecution's case with proof that he is indeed innocent. Where the balance inclines toward the accused, any provision excluding his evidence cannot be squared with the Constitution." Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Colum.L.Rev. 1, 54–55 (1977).

■ The constitutional right to confront adverse witnesses is fundamental and is of such importance that a State's interest in protecting a certain class of witnesses from embarrassment must fall before the right of confrontation and cross-examination. Thus a statute that purports to prohibit completely the introduction of the victim's consensual sexual activity with persons other than the defendant is unconstitutional unless given a judicial gloss requiring a hearing out of the jury's presence so that the defendant, upon motion, may be given an opportunity to demonstrate that due process requires the admission of such evidence because probative value in the context of that particular case outweighs its prejudicial effect on the prosecutrix. *State v. Howard,* 121 N.H. 53, 426 A.2d 457 (N.H.1981). See also *State v. LaClair,* 433 A.2d 1326 (N.H.1981).

■ We conclude that § 21.13 is constitutional on its face and as applied to the appellant in the instant case. We reject his claim that it is violative of the Sixth Amendment and Article I, § 10, Texas Constitution. We also reject his claim that the Fifth and Fourteenth Amendments were violated in the instant case. Due process was accorded the appellant for the reasons stated. See also Article I, § 19, Texas Constitution.

In arguing that the prosecutrix left a false impression with the jury and he was unable to refute the misleading testimony elicited by the State, appellant cites several cases dealing with suppression of evidence by the prosecution. The reliance upon such cases is misplaced. Here the appellant knew of the evidence during the trial, see *Means v. State,* 429 S.W.2d 490, 496 (Tex. Cr.App.1968), but was unable to refute it for the reasons already discussed. Further, there is no showing that the prosecutor deliberately presented a false picture of the facts by knowingly using perjured testimony or failing to correct its own testimony when it became apparent it was false. *Miller v. Pate,* 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Appellant's grounds of review are overruled.

Although the Court of Appeals was in error in holding that impeachment was limited under § 21.13 to the use of prior felony convictions, the court reached the right result. The judgment of the Court of Appeals is affirmed.

McCORMICK, J., dissents.

TEAGUE, Judge, concurring.

My, oh, my, how Judge Miller does fulminate over Presiding Judge Onion's use in his majority opinion of the age-old legal word "prosecutrix". And yet, the Dallas Court of Appeals escapes Judge Miller's censure, even though that court openly used the word "complainant", a synonym for "prosecutrix", when it referred to the

female person that the jury found had been raped by the appellant.

I am deeply concerned that to make of this cause a feminist issue will seriously detract from the importance of what is before us. Nevertheless, so that I will not be considered a sexist person, I must also write.

First, however, I would like to point out that this Court granted the petition for discretionary review that was filed on behalf of Virgil Dean Allen, appellant, not so that this Court's members could become engaged in a legal debate over the word "prosecutrix", but, instead, it was granted in order to consider whether the Dallas Court of Appeals correctly overruled appellant's contention that, because the female person who the jury found had been raped by the appellant left a false impression before the jury, the trial court erred in not permitting him to present evidence of her prior sexual activity, namely, her previously having had sexual relations with her boyfriend. Although I agree with appellant, that the female person did leave a false impression before the jury, I am unable to agree with him that such is sufficient to warrant reversing this cause. Whether the female person was or was not a virgin is not an element of the offense; her virginity or her no longer being a virgin was not relevant to any material element of the offense; her virginity or her no longer being a virgin does not in the least tend to make it possible that she consented to having sexual intercourse with the appellant; and, to me at least, I am unable to agree that such would have been of any or at least very little interest to any rational juror in deciding appellant's guilt. If there was error in excluding the evidence, it was certainly harmless beyond a reasonable doubt.

I believe that if no one else does, at least Mary-Claire Van Leunen, one of the most delightful and incisive expositors (generic) of scholarly writing, will enjoy Judge Miller's concurring opinion. Van Leunen once wrote:

My expository style relies heavily on the exemplary singular, and the construction "everybody ... his" therefore comes up frequently. This 'his' is generic, not gendered. "His or her" becomes clumsy with repetition and suggests that "his" alone elsewhere is masculine, which it isn't. "Her" alone draws attention to itself and distracts from the topic at hand. 'Their' solves the problem neatly but substitutes another. 'Ter' is bolder than I am ready for. 'One's' defeats the purpose of the construction, which is meant to be vivid and particular. "It's" is too harsh a joke. Rather than play hob with the language, we feminists might adopt the position of pitying men for being forced to share their pronouns around. Van Leunen, *A Handbook for Scholars*, pp. 4–5 (Alfred A. Knopf, 1978).

I am in agreement with the stylistic changes Judge Miller advocates; however, I find myself dramatically at odds with the reasons he gives for such changes. I therefore write separately, not only to encourage a modernization of our terminology, but also to expressly disassociate myself from Judge Miller's analysis of the problem.

Members of this Court have for many, many years referred to the victim of a sexual assault as "the prosecutrix", if such person was the complainant in a criminal prosecution. And such usage has always been understandable by most rational persons because in point of semantical fact, it is not erroneous to call the female victim of a sexual assault "the prosecutrix" in a criminal proceeding if she has, indeed, appeared as the chief witness for the State. That is precisely what the word "prosecutrix" means according to all of the authorities. In *Arnold v. State*, 148 Tex.Cr.R. 310, 186 S.W.2d 995, 997 (Tex.Cr.App.1945), this Court defined "a private prosecutor" as "one who prefers an accusation against a party whom he suspects to be guilty." Also see *Williams v. State*, 321 S.W.2d 72 (Tex.Cr.App.1958).

"Prosecutrix" is an agent noun, which is a noun denoting the performer of an action, as confirmed by the etymological notes that appear both in *Webster's New International Dictionary of the English Language* and the *Oxford English Dictionary.* The word "prosecutrix" is derived through Middle English, from a feminine ending in Latin for agent nouns, where the current masculine or generic ending is "-or"; "-tress" is the feminine ending usually associated with the masculine or generic ending "-er", taken in this instance from Old English, which evidently received it from Greek through late Latin.

Thus, but as easily observed, the word "prosecutrix" nicely fits into the meaning of an agent noun, just as the word "prosecutor" does. Further, because the word "prosecutrix" is formed by appending a gender-specific suffix to the verb "prosecute," the resulting construction is necessarily feminine. Likewise, "prosecutor" is masculine, although not necessarily so, since it also serves a generic function; the context will determine in which sense the word is to be understood.

Until recent times, the terms "prosecutor" and "prosecutrix" were universally understood to be roughly synonymous with "complaining witness" or "complainant", which words are derived from a participle of the verb "complaint", not from the addition of an agent noun suffix to it, and so do not exist in separate masculine and feminine forms. Although such usage may sound slightly odd to those citizens who reside in Dallas County, I find that Webster's does not yet report that the word "prosecutrix" is either archaic or regional, let alone rare or obsolete. It is therefore patently false to maintain that the word "prosecutrix" does not have the above meaning, even if it has others as well.

Therefore, Judge Miller's assertion that the word "prosecutrix" should not be used when referring to a victim because it does not mean "victim" is an especially unconvincing *non sequitur*. To be sure, however, "prosecutrix" is not synonymous with "victim", but then neither is "complainant".

In answer to Judge Miller's rhetorical question, see footnote 2 of his opinion, the term "prosecutor" would, of course, be appropriate for a male victim of a sexual assault, so long as he appeared as chief witness for the State. Especially is this so since the recent changes made in Chapter 22 of the Penal Code. To say that the language has never been used in this way is not only false, but recklessly so, since the usage is supported by centuries of judicial and vernacular history. To note but a single example from the authority upon which no less than Judge Miller himself relies most heavily, the Oxford English Dictionary reports that in 1769 the immortal Blackstone himself commented that, "[o]n a conviction of larceny in particular, the prosecutor shall have restitution of his goods." Surely, the great Blackstone did not mean to suggest by this statement that the King's lawyer was entitled to receive the stolen property as booty for a job well done.

Thus, Judge Miller's first reason for condemning the usage of the word "prosecutrix" fails utterly.

As for his remaining reasons, one is at once alerted to suspect some wayward form of feminist politics, or so it would seem from his characterization of the term as "blatantly sexist." The word "sexist" is not reported by the Oxford English Dictionary. Webster's now has the word "sexism" nestled comfortably in its addenda section between "sexidecimal" and "sex kitten", where it is given to mean "prejudice or discrimination based on sex; *esp:* discrimination against women", and "behavior, conditions, or attitudes that foster stereotypes of social roles based on sex." "Sexist" is its adjective, and may also be used to describe one who is. I believe that Judge Miller intended it in this latter sense.

The word "prosecutrix" is inherently sexist only insofar as it discriminates between men and women, boys and girls. That is to say, it "mark[s] or perceive[s] the distin-

guishing or peculiar feature of" gender. It is not, however, intrinsically sexist in the sense that it "make[s] a difference in treatment or favor on a basis other than individual merit." The Oxford English Dictionary also reports these various senses of "discriminate".

The word "prosecutor", however, at least surface wise, neither discriminates between the sexes nor does it discriminate against either one. It can be either a generic or a masculine term, depending upon the context in which it is used. While its etymology would seem to preclude reference to a specific female as a prosecutor, the word "prosecutor" may be used to refer to prosecutors in general, including both men and women without distinction.

Judge Miller posits that "If there are victims of murders, kidnappings, robberies, assaults, and burglaries, why can there not be victims of sexual assault?" The short answer to his query lies in the fact that there can be, under either the former Penal Code or the present Penal Code. I am unable to understand how Judge Miller can state that "Use of an aggressive word such as 'prosecutrix' gives rise to an inference that victims of sexual assault are not really 'victims' and such use may unfairly diminish the degree of harm actually suffered." I should like to go on record that I cannot find anywhere that makes it readily and immediately apparent in the etymology of the words "prosecutrix" or "prosecutor" that might suggest that any pejorative connotation should be, or ever was, attached to these words. The reason for marking a distinction in the first place, perhaps soon after the dawn of human speech occurred, is unclear, but it almost certainly was never intended to slight either sex. Therefore, Presiding Judge Onion will no doubt be surprised to learn that his use of the word "prosecutrix" in this Court's majority opinion diminishes the harm suffered by the female person who the jury found had been raped by the appellant or the interest of the State in defending her rights during appellant's trial.

Having said my piece, I concur in the judgment of the Court.

MILLER, Judge, concurring.

The majority disposes of appellant's contentions in an acceptable manner. I take issue only with the majority's improper use of the term "prosecutrix" instead of the proper term "victim," when referring to the person appellant sexually assaulted (formerly denominated as "raped").

Black's Law Dictionary 1100 (5th ed. 1979) defines "prosecutrix" as "a female prosecutor." Both the third and fourth editions of that dictionary restrict the term to criminal law. "Prosecutor" is defined as one who prosecutes another for a crime in the name of the government. *Id.* at 1099. The Oxford English Dictionary, Oxford University Press, 1971, page 1490, also defines the term as "a female prosecutor." The term does not appear in Webster's New Collegiate Dictionary, G. & C. Merriam Co., 1981. A cursory review of the Texas cases using the term reveals no definition, but indicates that "prosecutrix" has been used to refer to the victim of a rape since at least 1911. See *Ross v. State,* 132 S.W. 793 (Tex.Cr.App.1911). Even then it was an incorrect use of the term according to Black's Law Dictionary 959 (2d ed. 1910) which gave the definition as: "In criminal law. A female prosecutor."

In the majority opinion, the term is also used without a specific definition, but clearly refers to the victim of the sexual assault.[1] The use of this term in this manner is improper for at least three reasons.

First, use of the term in this manner is inconsistent with its definitions found in the preceding source materials. None of the definitions of "prosecutrix" make reference to the victim of a sexual assault. Since "prosecutrix" does not mean "victim"

---

1. The court of appeals opinion uses the term "complainant," when referring to the victim.

in this sense it should not be used when referring to a sexual assault victim.[2]

Second, use of the term is blatantly sexist. Initially, there is no reason why we would need to specify the gender of the State's attorney in any case. Thus, reference to a prosecutrix instead of a prosecutor would be unnecessary and would thus appear patronizing and demeaning. Moreover, if the term is used to refer to those who initiate criminal actions, its use has been restricted to sexual assault cases, where the overwhelming number of victims have been women. Such gender distinction is unnecessary. Also, if the term is used to imply that the woman who was sexually assaulted is actually prosecuting the case, then its use implies that in sexual assault cases, the State does not pursue the prosecution; rather, the woman-victim of the assault does. All other crime victims are represented by the State's attorney. See Art. 2.01, V.A.C.C.P. "Prosecutrix" therefore implies that the rights of the women involved in sexual assault cases are not defended by the State and the women must fend for themselves.

Third, use of the term "prosecutrix" rather than "victim" is prejudicial to the victim since it implies that there is no *victim* in a sexual assault case. If there are victims of murders, kidnappings, robberies, assaults, and burglaries, why can there not be victims of sexual assault? Use of an aggressive word such as "prosecutrix" gives rise to an inference that victims of sexual assault are not really "victims", and such use may unfairly diminish the degree of harm actually suffered.

The improper use of the term for the preceding three reasons should sufficiently justify using the term "victim" rather than "prosecutrix." Another independent reason may be found in the acts of the 1983 Legislature. That year, the Penal Code and Code of Criminal Procedure were amended to classify rape and sexual abuse as assaultive offenses, since they are acts of violence and not sex crimes. Also, offenses were defined in gender neutral terms so that both men and women could file charges. See House Study Group, Daily Floor Report, May 11, 1983, C.S.H.B. 2008, page 29–30. [attached as Appendix A for conference purposes only] Although we are not required to adopt legislative policy changes in the language of our opinions, this Court would do well to adopt the spirit of those changes when appropriate. The Legislature has moved ahead by addressing the problems generated by unnecessary gender descriptions; we should follow its lead and discontinue our improper use of such language.

In sum, the term "prosecutrix" should be relegated to the attic trunk, along with corsets and pantaloons, and the term "victim" placed in its stead.

In this posture, I concur in the majority's holding.[3]

### APPENDIX A

### HOUSE STUDY GROUP bill analysis

5/11/83

HB 2008

C. Evans

(CSHB 2008 by Danburg)

SUBJECT: Redefinition of criminal sexual offenses

COMMITTEE: Criminal Jurisprudence: committee substitute recommended

VOTE: 8 ayes—Peveto, T. Smith, Waldrop, Burnett, Danburg, Granoff, Hernandez, S. Hudson

---

2. Query, if "prosecutrix" is used to refer to the female victim of a sexual assault, would not the term "prosecutor" be appropriate for a male victim of a sexual assault? Such language has never been used.

3. And join the portion of Judge Teague's concurring opinion that states "I am in agreement with the stylistic changes Judge Miller advocates;".

0 nays

1 absent—Hury

WITNESSES: None

DIGEST: This bill replaces "he" and "his" with gender-neutral terms in sections of the Penal Code dealing with assault and aggravated assault. New gender-neutral offenses are also created for "sexual assault" and "aggravated sexual assault" in place of existing offenses for rape, aggravated rape, sexual abuse, aggravated sexual abuse, rape of a child, and indecency with a child.

The "sexual assault" provision covers acts defined currently as rape, sexual abuse, rape of a child, and indecency with a child. Language is changed to specify precisely the offensive conduct involved in this second-degree felony and to define consent. Existing defenses are preserved and a new defense is added regarding the offense of assault on a child for conduct that is a part of medical care.

The "aggravated assault" provision incorporates the illegal acts currently defined as aggravated rape and aggravated sexual abuse. The criminal penalty, a first-degree felony, and the defenses and affirmative defense to prosecution are carried over from current law. The defense for medical care to a child is also added.

Other revisions are made throughout the Penal Code and Code of Criminal Procedure to conform to the substantive changes made in this bill.

SUPPORTERS SAY: This bill makes several improvements in existing law. The major change is to reclassify rape and sexual abuse as *assault,* an act of violence rather than a sex crime. This would help eliminate the stigma that causes one out of ten rapes to go unreported to the police. Secondly, this bill removes references to gender in the law so both men and women can file charges. In particular, this change will allow for the prosecution of homosexual assaults, but it would also cover cases in which women attack men or assist in male attacks on women. This bill clarifies the types of assaultive actions that have in the past been the basis for convictions for sexual offenses. And it makes clear that a marriage license is not a license to commit sexual assault in cases where spouses are separated or divorced, by excluding from the definition of spouse married persons who are living apart or who have a court action pending for divorce or separate maintenance.

OPPONENTS SAY: This bill should be amended to permit prosecution of all those who sexually assault their spouses. A spouse would not be prosecuted unless the other spouse doesn't consent to the act. This would more adequately address the serious problem of rape within marriage.

OTHER OPPONENTS SAY: The existing offenses for rape and sexual abuse should stay the same. Juries will usually assess a much stiffer penalty for rape than they will for some type of assault. Rape is already perceived by most people as the ultimate assault.

NOTES: CSHB 2008 is essentially the same as CSHB 1730, by Danburg, except that CSHB 1730 eliminates *any* exception for nonconsensual conduct between spouses. CSHB 1730 has been reported favorably by the Criminal Jurisprudence Committee. A committee substitute for SB 966, by Whitmire, companion to HB 1730, has been reported by the Senate Jurisprudence Committee.

CLINTON, Judge, dissenting.

In note 1 the majority opinion sets out rationale of the Dallas Court of Appeals in finding that V.T.C.A. Penal Code, § 21.13 "does not contemplate the admission of evidence of prior sexual conduct for impeachment purposes unless the evidence is in the form of a prior felony conviction." *Allen*

*v. State*, 666 S.W.2d 245, 247 (Tex.App.—Dallas 1984). This Court did indeed grant review to determine whether that finding is a correct interpretation of the statute, and the majority now says the court of appeals reached its conclusion through "a misreading of the entire statute and particularly subsection (d)."

Nowhere in its opinion does the majority delineate its own reading of the statute to demonstrate that "evidence of the victim's prior sexual conduct" *is* admissible "to attack her credibility, to impeach her, if it does." That smacks of a global challenge to general credibility by showing specific acts of sexual conduct. Yet, the Court has "consistently rejected evidence of specific acts of unchastity when offered to attack the credibility of a female witness," Ray, Texas Law of Evidence (Third Edition) § 655, 1 Texas Practice 581.[1] The law review comment from which the majority quotes does not support its position; the comments editor merely says that such evidence *"should be* admissible to *rebut* testimony of the complainant ..."[2] My concern is that in rejecting rationale of the Dallas Court of Appeals the majority opinion is laying down a proposition for admitting testimony of prior sexual activity even broader than any extant before enactment of § 21.13.

A coauthor of the bill that metamorphosed ultimately into § 21.13 certainly intended to take care "to preserve the right of the defendant to impeach the victim's credibility by showing any prior felony convictions involving sexual conduct on her record." Weddington, Rape Law in Texas: H.B. 284 And the Road to Reform, 4 Am.J. Crim. Law 1, at 6 (1975) (Weddington). By the clear tenor of her explanation of purpose, development and evaluation of the legislation, *Weddington* strongly implies that other testimony of prior sexual activity is *not* admissible to launch an attack against the general credibility of a testifying victim.

The law review editor also examined *Weddington* and from that account and other sources concluded that a major change made along the way "evinces a legislative intent to exclude evidence of prior sexual conduct in most circumstances," *Comment*, at 320. With that in mind he further observes:

"In the past chastity was equated with veracity while unchastity was associated with dishonesty. As societal values about sexual activity have changed, the legal community has recognized 'a proper skepticism for the view that sexual activity can be equated with moral character and thus with testimonial reliability.' Under section 21.13 evidence of prior unchastity would probably not be material to a fact at issue. 'Insight into the sexual mores of a witness is *rarely a help* to a jury in determining if the witness is disposed towards untruthfulness.' "

"As a result of a lack of statutory clarity, the scarcity of appellate interpretation and the absence of other explanatory sources, the ramifications of section 21.13 remain largely unknown. In an attempt to stimulate meaningful guidelines, *some suggestions* concerning the aspects of evidence of sexual conduct—consent, credibility, and physical evidence—*are offered."*
Comment, 31 Baylor L.Rev. 317, at 323 (1979) (Comment). (All emphasis is mine throughout unless otherwise indicated.)

---

1. Reflecting existing practice in Texas, Rule 608(b) of Texas Rules of Evidence bars inquiry on crossexamination and proof by extrinsic evidence of specific instances of conduct for the purpose of attacking or supporting credibility of a witness, other than showing conviction of crime as provided by Rule 609. Rule 608(b) of Criminal Rules of Evidence proposed by the Senate-House Select Committee on the Judiciary is an identical prohibition. See Vol. 48, No. 8 Texas Bar Journal (September 1985) 928, at 938 (hereafter Bar Journal).

2. The text *appears* in Part II, entitled "Future Effects." At the threshold the writer explains his endeavor, *viz:*

*Id.,* at 325–326.[3]

In *Young v. State,* 547 S.W.2d 23 (Tex. Cr.App.1977), the trial court excluded evidence of an abortion and an act of sexual intercourse the night before the alleged rape. Contending that existing case law was "still good authority" despite enactment of § 21.13, Young urged that such prior sexual conduct was "relevant on the issue of consent and the *credibility of the alleged victim, the immoral character of the woman* and the mitigation of punishment." See *Comment,* supra, at 320–321. Though alluding particularly to "consent," the *Young* Court held the trial court correctly excluded that proffered evidence because "not germane to the issue of the victim's acquiescence, *or any other issue raised by the evidence," Young,* supra, at 25. See also *Wilson v. State,* 548 S.W.2d 51 (Tex.Cr.App.1977): matters revealing prior sexual conduct accused sought to introduce "not germane to the issue of the victim's acquiescence, *or any other fact at issue in the case as required by Sec. 21.13,* supra. See *Young v. State,* [supra] and cases there cited."

In my view *Wilson* and *Young* were correctly decided and should be followed; they are not due the criticism leveled against them.[4] Accordingly, I respectfully dissent and now turn to address *State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (Ct.App. 1978), and other perceptions of its meaning. As shall be seen, *Comment* errs in its understanding of *Herrera,* as does the majority in believing that *Herrera* somehow supports admitting evidence of past sexual conduct to attack credibility.

*Comment* states that the New Mexico shield statute precludes evidence of past

sexual conduct unless it is *"material to the case"* and "its inflammatory or prejudicial nature does not outweigh its probative value." *Id.,* at 322. In terms the statute does not mention "relevancy," but the opinion of the *Herrera* court does and dwells on it at length. What the *Comment* writer did was to read the statement in *Herrera* —that an offering party must first make a preliminary showing of relevancy of evidence as to past sexual behavior—to mean something other than "material to the case." Then, returning to terms of the statute itself he came up with a three part test: the first from *Herrera* and the second and third from the statute. However, he misapprehends the opinion in *Herrera.*

Patently all *Herrera* does is to explain that as used in the statute "material to the case" means "relevant." After discussing and defining "relevancy"—"exists only as a relation between an item of evidence and a matter properly provable in a case" and to raise an issue of relevancy there must be shown "a reasonable basis for believing that past sexual conduct is pertinent to [an issue in the case]"—the *Herrera* court concludes:

"Absent a showing sufficient to raise an issue as to relevancy, questions concerning past sexual conduct are to be excluded. *Once such a showing is made,* the balancing test of Evidence Rule 403 and [the statute] is to be applied in determining admissibility."

582 P.2d at 393.[5] Thus only one step need be taken to apply the prescribed balancing test. See note 8, *infra.*

Our statute allows a trial judge to admit evidence described upon a finding that it is

---

**3.** Emphasis added in original. Notes omitted, but see *People v. Dawsey,* 76 Mich.App. 741, 257 N.W.2d 236, at 238, 239 (1977).

**4.** The law review writer perceives *Wilson* "as simply requiring the evidence be germane"—an interpretation he believes "provides little guidance in determining if prior sexual conduct is admissible." His preference is "the three-fold test provided by the New Mexico court in *Herrera,*" cited in the majority opinion in this cause,

in that it "establishes more meaningful guidelines." *Comment,* at 322–323.

**5.** New Mexico Evidence Rule 403 is the functional equivalent of part of Texas Rules of Evidence, Rule 403, and of our own general rule to the effect that probative value of tendered evidence must outweigh its prejudicial effect. See *Ray,* op cit., § 1481, 2 Texas Practice 167–168; see also Rule 403, proposed Texas Rules of Criminal Evidence, *Bar Journal,* at 932.

"material to *a fact at issue in* the case" and then applying the prescribed balancing test. Though it uses the term "material," taken as a whole that statutory language formulates a matter more of "relevancy" than "materiality." [6]

Professor Ray has articulated a statement of the former: to be relevant, evidence must "tend to establish the truth of a proposition material to the issues." *Ray,* op cit., § 1481, 2 Texas Practice 167. The Supreme Court experimented for a while with a "Test of Relevancy" that respectively defined "materiality" and "relevancy," and made up a test for admissibility. See former rule 401, Texas Rules of Evidence. Recently the Supreme Court abandoned dual definitions in favor of one all encompassing definition, *viz:*

" 'Relevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." [7]

Any currently acceptable definition of "relevancy" includes the notion of "materiality." Therefore it is consistent to require "a preliminary showing of the relevancy of the victim's sexual conduct;" that is, the proffered evidence must be pertinent to a disputed material issue in the case. Correctly read the opinion in *Herrera* does not convert the New Mexico statutory provisions into a three part test; [8] rather it is an aid in generally construing own statute.

*Herrera* dealt with an offer of prior sexual conduct on a defensive issue of *consent,* and the appellate court found the trial court correctly excluded the proffer for that purpose. The decision does not support the finding of the majority here that such evidence is admissible to attack the general credibility of a testifying victim. Nor does any other opinion in this jurisdiction which acknowledges in the legal community that "proper skepticism for the view that sexual activity can be equated with moral character and thus with testimonial reliability." See *ante,* at p. 938.[9]

Because the majority would have this Court lay down a rule which pierces our own rape victim shield law, I respectfully dissent to that as well.

---

**6.** A shorthand rendition often used is that to be admissible evidence must be relevant to a material issue in the case.

**7.** At least three subsequent opinions confirm that *Herrera* requires a preliminary showing of relevancy and, if relevant, then immediately subjecting that evidence to a balancing test by weighing its probative value against prejudicial effect: *State v. Fish,* 101 N.M. 329, 681 P.2d 1106, 1110 (S.Ct.1984); *State v. Gillette,* 102 N.M. 695, 699 P.2d 626, 632 (Ct.App.1985); *State v. Romero,* 94 N.M. 22, 606 P.2d 1116, 1120 (Ct.App.1980).

**8.** The current definition is, of course, the same as in Federal Rule 401. Proposed Rule 401, Texas Rules of Criminal Evidence is identical.

**9.** If promulgated as presently written, Rule 412 of proposed Rules of Criminal Evidence replaces and repeals § 22.065. The rule excludes "reputation or opinion evidence of the past sexual behavior of an alleged victim of such [pre-

scribed] crime," but allows "evidence of specific instances of an alleged victim's past sexual behavior" if admitted in accordance with control provisions similar to § 21.13(b) and it is evidence:

(A) that is necessary to rebut or explain scientific or medical evidence offered by the state;

(B) of past sexual behavior *with the accused* and is offered by the accused upon the issue of whether the alleged victim consented to the sexual behavior which is the basis of the offense charged;

(C) that relates to the motive or bias of the alleged victim;

(D) admissible under rule 609 [Impeachment by Evidence of Conviction of Crime]; or

(E) that is constitutionally required to be admitted; and

its probative value outweighs the danger of unfair prejudice.

*Bar Journal,* at 933–934.