COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-05-444-CR

 

 

DAVID ALLAN LADESIC                                                        APPELLANT

A/K/A
DAVID LADESIC

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

MEMORANDUM
OPINION[1]

 

                                              ------------








In two points, Appellant
David Ladesic appeals his convictions for sexual assault and indecency with a
child.  After finding Appellant guilty,
the jury assessed punishment at life in prison for sexual assault and forty
years= imprisonment for indecency with a child.[2]  The court sentenced Appellant accordingly and
ordered that the sentences run consecutively. 
We affirm. 

BACKGROUND

S.C., the fourteen-year-old
complainant, accused Appellant of engaging in a sexual relationship with
her.  Appellant, who was twenty-five years
old during the time of the incidents, worked for S.C.=s father, Jim C., at a tattoo studio along with Jennifer F.  Jim worked and lived at the studio and in
2004 moved S.C. from Oklahoma to Texas, where she also moved into the
studio.  Unsatisfied with the living
arrangement, Jim and Jennifer agreed that S.C. should temporarily move into
Jennifer=s house.[3]








While cleaning her house,
Jennifer found suspicious notes that led her to believe that Appellant and S.C.
were engaged in an intimate relationship. 
Jim testified that the notes made him suspicious about the type of
relationship his daughter was having with Appellant, that he recognized the
handwriting on the notes, and that the notes were written by S.C. and
Appellant.  He eventually concluded that
S.C. and Appellant were having sex.  At
trial, the State asked Jim if S.C. had ever admitted to having sex with Appellant.  Appellant objected, and the trial court
sustained the objection; however, Jim answered the question anyway, stating
that S.C. had admitted to having sex with Appellant.  The trial court instructed the jury to
disregard Jim=s answer but
denied Appellant=s motion for
a mistrial.

Outside the jury=s presence, Appellant asked Jim if he had found other notes that S.C.
wrote to other men or from other men to S.C. 
Jim answered that he had found Anotes that were about other boys.@  The trial court denied
Appellant=s motion to
admit those notes or any testimony about sexual conduct within those notes.  The court ruled to exclude the evidence again
when, in the jury=s presence,
Appellant cross-examined S.C., asking her about writing notes to other
boys.  The court, however, admitted notes
offered by the State, which were allegedly written between S.C. and Appellant.[4]  Later at trial, S.C. testified that the notes
offered by the State were written between her and Appellant.  S.C. also testified that she and Appellant
had sex on three occasions starting in January 2005.








 

 

MOTION FOR MISTRIAL

In his first point, Appellant
contends that the trial court abused its discretion in overruling his motion
for a mistrial, which he requested after the court instructed the jury to disregard
Jim=s statement that
S.C. had admitted to having sex with Appellant.

Standard Of Review








When the trial court sustains an objection and instructs
the jury to disregard but denies a defendant=s motion for a
mistrial, the issue is whether the trial court abused its discretion in denying
the mistrial.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004). 
Only in extreme circumstances, when the prejudice caused by the improper
testimony is incurable, i.e., Aso prejudicial
that expenditure of further time and expense would be wasteful and futile,@ will a mistrial
be required.  Id.; see also Simpson v.
State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. denied, 542
U.S. 905 (2004).  In determining whether
the trial court abused its discretion in denying the mistrial, we consider the
severity of the misconduct (prejudicial effect), the curative measures, and the
certainty of conviction absent the misconduct. 
Hawkins, 135 S.W.3d at 77; Mosley v. State, 983 S.W.2d
249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).

 

Hearsay Statement

Given the issues in this case, Jim=s improper hearsay
statement that S.C. had admitted to having sex with Appellant was moderately
prejudicial to Appellant.  Although it
does not appear from Appellant=s objection that
Jim testified about this admission in an ardent or emotional manner, the
statement alone was prejudicial.  A
prejudicial comment, however, is often curable by an instruction to the
jury.  When a court gives a curative
instruction, mistrials ought to be an exceedingly uncommon remedy for any
residual prejudice.  West v. State,
121 S.W.3d 95, 106-07 (Tex. App.CFort Worth 2003,
pet ref=d). Thus, judicial
admonishments to the jury are presumed effective.  Id. at 107.  In this case, a curative instruction was
requested and the court promptly admonished the jury to disregard Jim=s response.  We must presume that this instruction was
effective because the comment, while mildly prejudicial, was not so prejudicial
that expenditure of further time and expense would have been wasteful and
futile.  See id.; Hawkins,
135 S.W.3d at 77; see also Simpson, 119 S.W.3d at 272. 








Now we address the certainty
of Appellant=s
convictions absent the misconduct.  See
Hawkins, 135 S.W.3d at 77; Mosley, 983 S.W.2d at 259.  We must determine whether the jury would have
still found Appellant guilty had they never heard Jim=s statement.

S.C. testified on direct
about three separate occasions in which she and Appellant engaged in sexual
relations.  The following are excerpts
from the State=s direct
examination of S.C., in which she describes their first sexual encounter:

Q:     Did it happen in January?

 

A:     Yes, sir.

 

Q:     Did it ever develop to more than just touching your breasts and
kissing?

 

A:     Yes, sir.

 

Q:     What did it develop to,
[S.C]?

 

A:     We had sexual intercourse
three times.

 

Q:     When was the first time
you had sex with him?

 

A:     In January.

. . .
.

 

Q:     So you=re on
the couch wearing your middle school sixth 

grade choir shirt, and who takes your pants off?

 

A:     Part of the way, he did.  The rest of the way, I did.

 








Q:     How old was David at this time?

 

A:     25.

 

. . .
.

 

Q:     How did this progress,
[S.C.]?  I mean, were you facing him                orC

 

A:     No, sir.  He told me to
lie on my side to keep an eye out for Jennifer.

. . .
. 

 

Q:     Tell me how you actually had sex.

 

A:     I lied on my right side and put my legs on the floor, and hegot
behind me, I guess, and we had sex.

 

Q:     Did he do anything with his penis?

 

A:     Yes.

 

Q:     What did he do?

 

A:     He penetrated me.

 

Q:     When you say penetrate, where did he
penetrate you?

 

A:     My vagina.








The above testimony is only a
small portion from twenty-six pages of record, in which S.C. recounted in
detail the three sexual encounters between her and Appellant.  Because S.C. testified about the sexual
encounters on direct examination and described the acts in great detail, her
testimony was far more damaging to Appellant and persuasive to the jury than
Jim=s three word statement, AYes, she did.@  In addition, Jennifer=s son, who was also living at the house, testified that he saw S.C.
and Appellant kissing on one occasion. 
For these reasons, Appellant=s convictions remain certain even absent Jim=s improper hearsay statement. 
Balancing these three considerations, we hold that even though Jim=s statement was prejudicial to Appellant, the trial court did not
abuse its discretion in denying Appellant a mistrial.  We overrule Appellant=s first point.

EXCLUSION OF EVIDENCE

In his second point, Appellant complains that the trial
court abused its discretion in denying his attempt to introduce evidence of
other sexual acts described in notes allegedly written between S.C. and other
young men.

Preservation Of Error








To preserve error, the substance of the excluded evidence
must be shown by offer of proof unless it is apparent from the context of the
questions asked.  Tex. R. Evid. 103(a)(2); Tex.
R. App. P. 33.2; Chambers v. State, 866 S.W.2d 9, 27 (Tex. Crim.
App. 1993), cert. denied, 511 U. S. 1100 (1994); Fairow v. State,
943 S.W.2d 895, 897 n.2 (Tex. Crim. App. 1997). 
Error may be preserved by an offer of proof in question and answer form
or in the form of a concise statement by counsel.  Tex.
R. Evid. 103(b); Love v. State, 861 S.W.2d 899, 901 (Tex. Crim.
App. 1993).  Error is not preserved if
the offer of proof is inadequate.  See
Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998).

Appellant=s counsel
attempted once when Jim testified and again when S.C. testified to offer into
evidence the notes or the content of the notes allegedly written between S.C.
and other young men.  The State objected
on the grounds of Texas Rule of Evidence 412, and the trial court denied
Appellant=s request, reasoning that no other sexual
relations were ever brought up during testimony, making the notes= sexual content
irrelevant.

Each time before Appellant=s counsel
attempted to cross-examine a witness about the evidence, he made a general
statement about the notes, the sexual content in the notes, and the relevancy
of the evidence to the issues in the case. 
Specifically, he mentioned that the notes discussed Aintimate acts@ and Asexual acts@ between S.C. and
other young men.  Furthermore, during a
voir dire examination outside the jury=s presence,
Appellant=s counsel asked Jim if he had ever found
notes between S.C. and other young men with whom S.C. was sexually active.  Jim testified that he had found Anotes that were
about other boys.@ 








The State argues that Appellant failed to preserve error
because he did not actually tender the notes to the court.  However, Appellant=s counsel made a
reasonably specific summary of the evidence, told the court what the notes
would show, and argued the relevancy of the evidence.  See Tex.
R. Evid. 103(b); Love v. State, 861 S.W.2d at 901 (holding that
error may be preserved by an offer of proof in question and answer form or in
the form of a concise statement by counsel). 
Appellant=s counsel made clear that he wanted to
cross-examine both Jim and S.C. about the other notes describing S.C.=s Asexual acts@ with other
males.  It is apparent by the State=s Rule 412
objection that it knew the precise nature of the excluded evidence, whether by
testimony or actual notes.  Likewise, the
court was aware of the testimony that Appellant was attempting to illicit by
the nature of its ruling, referencing the Asexual relations@ purported to be
in the notes.  Therefore, Appellant=s counsel=s concise
statement and voir dire examination of Jim was reasonably specific to show the
court the substance of the excluded evidence and to preserve error for our
review.  See Love, 861 S.W.2d at
901.

Standard Of Review

We review decisions involving
admission or exclusion of evidence for an abuse of discretion.  Erdman v. State, 861 S.W.2d 890, 893
(Tex. Crim. App. 1993); Montgomery v. State, 810 S.W.2d 372, 392 (Tex.
Crim. App. 1991)(op. on reh=g).  Under this standard, we
will not reverse the trial court=s ruling as long as it is at least within the zone of reasonable
disagreement.  Montgomery, 810
S.W.2d at 391.








Rule 412

Appellant argues that the notes are admissible under Rule
412 to show S.C.=s motive or bias in accusing Appellant of
sexual assault.  See Tex. R. Evid. 412(b)(2)(C).  This rule states:

[i]n a prosecution for sexual
assault or aggravated sexual assault, or attempt to commit sexual assault or
aggravated sexual assault, evidence of specific instances of an alleged victim=s past sexual behavior is also not
admissible, unless:

(1) . . . 

(2) it is evidence:

(A) that is necessary to rebut or
explain scientific or medical evidence offered by the State;

(B) of past sexual behavior with
the accused and is offered by the accused upon the issue of whether the alleged
victim consented to the sexual behavior which is the basis of the offense
charged;

(C) that relates to the motive or
bias of the alleged victim;

(D) is admissible under Rule 609;
or

(E) that is constitutionally required
to be admitted; and

(3) its probative value outweighs
the danger of unfair prejudice. 

 

Tex. R. Evid. 412.








Appellant states in his brief that S.C. did not like or
trust Appellant and that she knew that Appellant and Jennifer were in a
relationship.  Appellant contends that
these factors show S.C.=s motive in accusing Appellant of sexual
assault.  However, the evidence
suggesting that S.C. lied about their sexual encounters is extremely thin.  See Stephens v. State, 978 S.W.2d 728,
734-35 (Tex. App.CAustin 1998, pet. ref=d) (holding that
evidence showing complainant was pregnant before the sexual assault was
inadmissible to show complainant=s motive to lie in
order to conceal her sexual encounters with her boyfriend).

Appellant points out general testimony, in which S.C.
stated that she no longer loved Appellant, that she felt Appellant took
advantage of her, and that only Aa very small part@ of her still
cared for Appellant.  Further, S.C.
testified that she knew that Jennifer and Appellant were engaged at one time
and that eventually her relationship with Jennifer became somewhat
strained.  Appellant argues that this
evidence coupled with the excluded evidence shows a possible motive for S.C. to
lie about their sexual encounters. 
Specifically, Appellant contends that the excluded evidence could have
shown that the notes the State presented were perhaps between S.C. and other
young men.  In reviewing the evidence, we
conclude that Appellant did not demonstrate a definite and logical link between
the complainant=s past sexual conduct and the alleged
motive and bias under Rule 412(b)(2)(C). 
Id. at 735.  Because
Appellant presents a tenuous link, we hold that the court did not abuse its
discretion in excluding the evidence to show S.C.=s motive or bias.








Appellant also argues that because the notes were excluded
from evidence, he was denied his right to confront the accuser.  See U.S.
Const. Amend. VI; Tex. R. Evid. 412(b)(2)(E).  We disagree. 
The right to confront and to cross‑examine is not absolute and
may, in appropriate cases, bow to accommodate other legitimate interests in the
criminal trial process.  Allen v.
State, 700 S.W.2d 924, 931 (Tex. Crim. App. 1985) (holding that
section 21.13 of the Texas Penal Code, the precursor to Rule 412, was constitutional
and did not, on its face, violate the accused=s right to
confrontation); see also Chambers v. Mississippi, 410 U.S. 284, 295, 93
S.Ct. 1038, 1046 (1973).        While the
trial court did not allow Appellant to address the sexual nature of the other
notes, it did allow Appellant to thoroughly question S.C. about the other
notes.  In front of the jury, Appellant
cross-examined S.C., asking her questions about dating other boys, about
writing notes to the boys she was dating, and establishing that some of these
notes made their way home to Jennifer=s house.  Appellant had presented the allegation that
the notes between S.C. and Appellant might have been between S.C. and other
young men; therefore, denying Appellant=s request to
further discuss the sexual relations allegedly described in the notes did not
violate Appellant=s right to confrontation.








Additionally, what little probative value, if any, the
other Asexual acts@ content provided
would have been far outweighed by the danger of unfair prejudice and
embarrassment to the complainant, especially given her young age.  See Tex.
R. Evid. 412(b)(3).  We hold that
the trial court did not abuse its discretion by excluding evidence of S.C.=s past sexual
behavior.  Accordingly, we overrule
Appellant=s second point.

 

CONCLUSION

Having overruled all of Appellant=s points, we
affirm the trial court=s judgment.

 

 

DIXON
W. HOLMAN

JUSTICE

 

PANEL A:  HOLMAN, GARDNER, and MCCOY, JJ.

 

MCCOY, J. concurs
without opinion.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 11, 2007











[1]See Tex.
R. App. P. 47.4.





[2]Appellant received an enhanced
punishment for sexual assault due to  a
prior conviction for aggravated sexual assault of a child under fourteen years
of age.





[3]Jennifer was not S.C.=s biological mother, but she and
Jim had been in a prior relationship for approximately seven years.  Also, Jennifer dated Appellant during the
time S.C. lived with her.





[4]The trial court denied Appellant=s objections to the State=s exhibits one and three through
sevenCnotes from S.C. to AppellantCbut sustained his objection as to
the State=s exhibit two, which contained
extraneous offense evidence.