**Opinion filed February 26, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00265-CR

_____

**DAVID ALAN VAN HOUTEN, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR32754**

## M E M O R A N D U M   O P I N I O N

The jury convicted David Alan Van Houten[1] of two counts of sexual assault of a child and two counts of improper relationship between an educator and a student and assessed his punishment at confinement for a term of thirteen years in the Institutional Division of the Texas Department of Criminal Justice on each of the four counts. The trial court ordered that appellant's thirteen-year sentence for the second count of sexual assault of a child is to be served consecutively to his thirteen-year sentence for the first count of sexual assault of a child. Appellant challenges his convictions and punishment in four issues. We affirm.

---

[1]We note that appellant's last name is spelled "Van Houten" and "Vanhouten" throughout the record.

*Background Facts*

Appellant taught seventh and eighth grade social studies at Midland Academy Charter School. The indictment alleged that he engaged in sexual intercourse with "C.C." on two occasions. C.C. was a fourteen-year-old female student of appellant. The first occasion is alleged to have occurred on or about September 26, 2006, and the second occasion occurred on or about October 16, 2006.[2] Appellant does not challenge the sufficiency of the evidence supporting the convictions for conduct alleged to have occurred on or about September 26, 2006. However, he challenges the sufficiency of the evidence supporting the convictions for the conduct alleged to have occurred on or about October 16, 2006.

Julie Crosby taught with appellant. Prior to the start of the school day on October 18, 2006, she entered appellant's classroom to confer with him about a school matter. She observed appellant and C.C. engaging in a "romantic kiss" on this occasion. Crosby subsequently reported her discovery to her superiors who suspended appellant from teaching on that date. The school board ultimately terminated appellant from teaching at the school.

Crosby and other teachers observed that appellant and C.C. were frequently together on a daily basis. Crosby testified that she saw C.C. enter appellant's classroom several times a day and that C.C. would eat her lunch in his classroom every day. Stephanie Brown testified that C.C. would walk around with appellant every day during his outside duty assignment each morning. Crosby and Brown testified that C.C. would often leave her physical education class to be with appellant. Diane Edwards testified that appellant pulled C.C. out of her class on seven occasions for the purported reason of testing her for the gifted and talented program at the school.

C.C. initially denied that the kissing event occurred on October 18, 2006. She later agreed with Crosby's allegation that she and appellant were kissing. C.C. testified that she started "hanging out" with appellant during her seventh grade year. She stated that she spent every lunch and recess period with him and that she would skip her other classes to see him. C.C. testified that appellant

---

[2]The two counts of sexual assault of a child alleged that appellant caused the penetration of C.C.'s sexual organ with his sexual organ on or about September 26, 2006, and on or about October 16, 2006. TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (Vernon Supp. 2008). The two counts of improper relationship between an educator and a student alleged that he engaged in sexual intercourse with C.C. on both of these dates. TEX. PENAL CODE ANN. § 21.12(a)(1) (Vernon Supp. 2008); *see* TEX. PENAL CODE ANN. § 21.01(3) (Vernon Supp. 2008). In this regard, TEX. PENAL CODE ANN. § 21.12(c) (Vernon Supp. 2008) provides that, "[i]f conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or both sections."

told her that he looked at her as his own daughter. C.C. and appellant remained in contact over the summer between her seventh and eighth grade years because C.C. babysat for him, and they called each other during the summer break.

C.C. testified that she and appellant became closer friends after school started back for her eighth grade year. C.C. testified that she and appellant engaged in sexual intercourse on two occasions during her eighth grade year. The first occasion occurred on the date of her fourteenth birthday (September 26, 2006) in appellant's classroom. She testified that the second occasion occurred on a Monday in October of 2006, presumably on October 16, 2006. C.C. testified about an additional episode that occurred between September 26, 2006, and the second sexual intercourse event that occurred on or about October 16, 2006, wherein appellant asked C.C. if she "wanted to try something again." This intervening episode did not result in sexual intercourse, however, because C.C. "got scared."

Appellant testified on his own behalf at trial. He denied having sexual intercourse with C.C. He admitted to giving C.C. hugs from time to time and kissing her on the forehead on occasion. He also testified that he told C.C. that he thought of her as a daughter. With respect to the alleged kissing episode that occurred on October 18, 2006, appellant testified that he was just giving C.C. a hug when Crosby entered his classroom.

*Sufficiency of the Evidence*

In his first issue, appellant challenges the legal sufficiency of the evidence supporting his convictions for the second count of sexual assault of a child and second count of engaging in an improper relationship between an educator and a student. In order to determine if the evidence is legally sufficient, we must review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000). The jury, as the finder of fact, is the sole judge of the weight and credibility of the witnesses' testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). A reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in

3

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318-19).

Appellant bases his evidentiary contention on C.C.'s testimony found at Volume VII, Pages 305-06 of the reporter's record wherein she stated that appellant did not place his penis inside of her. This testimony references the intervening episode described above that occurred between the two instances of sexual intercourse described by C.C. As noted previously, C.C. testified that appellant engaged in sexual intercourse with her on her birthday. C.C. additionally testified about a subsequent episode at Volume VII, Pages 311-17 of the reporter's record when appellant put "[h]is penis in [her] vagina" after he told her to pull down her pants and get on the floor. C.C.'s description of the subsequent episode of sexual intercourse constitutes legally sufficient evidence supporting appellant's convictions for the second count of sexual assault of a child and the second count of engaging in an improper relationship between an educator and a student. In this regard, the uncorroborated testimony of a child sexual assault victim alone is sufficient to support a conviction for sexual assault of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon 2005). There is no requirement that physical, medical, or other evidence be proffered to corroborate the victim's testimony. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Sandoval v. State*, 52 S.W.3d 851, 854 n.1 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). Appellant's first issue is overruled.

*Victim's Sexual History*

In his third issue, appellant contends that the trial court erred in not permitting him to offer evidence of other instances of sexual contact involving C.C. A trial court's decision to exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion as long as the decision to admit evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991). The appeals court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If evidence exists supporting the decision to exclude evidence, there is no abuse of discretion, and the decision of the trial court will not be reversed. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379.

4

TEX. R. EVID. 412 is a "rape shield" law intended to shield a sexual assault victim from the introduction of highly embarrassing, prejudicial, and irrelevant evidence of prior sexual behavior. *Boyle v. State*, 820 S.W.2d 122, 147-48 (Tex. Crim. App. 1991), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899, 911 n.13 (Tex. Crim. App. 1990); *Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985). The admissibility of an alleged victim's past sexual behavior is subject to a two-part test: (1) the evidence must fall within one of the five enumerated circumstances in Rule 412(b)(2) and (2) its probative value must outweigh the danger of unfair prejudice. Rule 412(b)(2), (b)(3); *Boyle*, 820 S.W.2d at 148. The nurse examiner who examined C.C. testified that she found irregular hymen edges indicating that something had penetrated C.C.'s vaginal opening. Accordingly, evidence of C.C.'s previous sexual conduct would possibly have been admissible under Rule 412(b)(2)(A) to rebut or explain the nurse examiner's findings.

Appellant directs us to two instances where the trial court denied his requests to offer evidence of C.C.'s previous sexual conduct. The first instance occurred during the cross-examination of Wade Cherry, the principal of Midland Academy Charter School. Appellant's trial counsel advised the trial court that he wanted to ask Cherry about C.C. purportedly reporting to Cherry that she had been sexually abused prior to her eighth grade year. The trial court denied appellant's request. However, appellant did not make a subsequent offer of proof regarding the testimony he sought to elicit from Cherry. The failure to make an offer of proof results in a waiver of any error regarding the excluded evidence. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

Appellant made an offer of proof with respect to the second instance. Appellant sought to offer testimony from C.C. that she had previously "snuck out" of her house to be with a boy. By its express terms, Rule 412(b) applies to "evidence of specific instances of an alleged victim's past sexual behavior." Evidence that appellant snuck out with a boy simply does not equate to evidence of a specific instance of past sexual behavior.

We conclude that the trial court did not abuse its discretion in overruling appellant's requests in the two instances cited by him. Moreover, we note that the trial court permitted appellant to offer other evidence pertaining to C.C.'s past sexual conduct. Specifically, the trial court permitted appellant to testify that C.C. reported to him on one occasion that she had been sexually molested

5

by someone else and that she believed she may have been pregnant previously. Appellant's third issue is overruled.

*Grooming Testimony*

In his fourth issue, appellant challenges the admission of "grooming" testimony from Andra K. Chamberlin. Chamberlin is the program director and lead forensic interviewer of Midland Rape Crisis and Children's Advocacy Center. She offered the following testimony regarding grooming:

Q. I would like you to now address the issue of a perpetrator grooming a child, and what that means.

A. Well, we look for --

Q. Is that common?

A. It is common. And you can see it in cases where there is what we call intrafamilial abuse, abuse that occurs in a home between a stepdad, mom, stepmom and a child. But I guess the best way to describe grooming is think about it as dating in a way, because you had that first tentative meeting, so to speak. And, you know, when we date, we may eventually kind of have our shoulders rubbed. And then we might hold hands. And then we might put our arms around the waist. And you know, the relationship progresses over a period of time until eventually a couple may become, you know, intimate or something. But it is a progression. It's not just a one-act thing. It is something that occurs where, let me test and see if you are comfortable with this. And if you are not comfortable, I'm going to pull back and say, I'm sorry, I'm sorry, you misunderstood. But if you are comfortable, then I'm going to move it to the next level and I'm going to do something else. And then that progresses to finally you do have abuse occurring.

Q. Okay. And is that normally what a perpetrator would go through? They wouldn't initially just go out and attack a child, if it is someone the child knows?

A. Well, you know the stories that we hear about in the newspaper unfortunately are usually the horrific stories of children who are abducted and violently raped and murdered. Those are rare, even though we hear it – those are what we hear about on the news. What is common, at least in our community, and what we have seen at our center, it is again people known to the children that abuse the kids. So you have to generally have that grooming in place to keep the kids quiet. If it is a one-time violent assault, generally children are going to be talking.

Q. And could this grooming process go on for a long period of time?

6

A. It could go on as long as the abuse went on.

Q. Okay. Have you seen cases where a grooming process has taken years from actual initial touching to actual penetration?

A. Yes.

Appellant argues that Chamberlin was not qualified to offer expert testimony about grooming. TEX. R. EVID. 702 provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." No rigid formula exists for determining whether a particular witness is qualified to testify as an expert. *Harnett v. State*, 38 S.W.3d 650, 658 (Tex. App.—Austin 2000, pet. ref'd). The rule itself provides that the requisite expertise may be acquired through knowledge, skill, experience, training, or education. *Id*. "It is almost impossible to lay down any definite guidelines for determining knowledge, skill or experience required in a particular case or of a particular witness." *Id*.

Under Rule 702, the proponent of scientific evidence must show, by clear and convincing proof, that the evidence he is proffering is sufficiently relevant and reliable to assist the jury in accurately understanding other evidence or in determining a fact issue. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (citing *Nenno v. State*, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999)). The requirements of reliability apply with less vigor to fields of study from the soft sciences, such as the social sciences, or fields that are based primarily upon experience and training as opposed to the scientific method. *Nenno*, 970 S.W.2d at 560. The reliability of "soft" science may be established by showing that (1) the field of expertise involved is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon or utilizes the principles involved in that field. *Weatherred*, 15 S.W.3d at 542 (citing *Nenno*, 970 S.W.2d at 561).

Appellant objected to Chamberlin's qualifications and expertise at the outset of her testimony. The trial court conducted a hearing outside the presence of the jury regarding

Chamberlin's qualifications to testify. Chamberlin testified that she has a Bachelor's Degree in sociology with a minor in psychology and that she had completed her course work for a Master's Degree in psychology. She has worked in the field of interviewing child abuse victims for eighteen years, and she has 700 hours of clinical work in the field. Chamberlin teaches others about child abuse, and she has been chosen by the Children's Advocacy Centers of Texas to design, implement, and evaluate a forensic interview training program for the State of Texas. Chamberlin testified that she has extensive firsthand experience with sexually abused children and that she has an up-to-date knowledge of the professional literature on child sex abuse. Chamberlin additionally testified that she has studied the common characteristics of child molesters and that she is familiar with the concept of the grooming process of the perpetrator upon a child. She stated the concept of grooming is information that is not generally known by the common lay person and that testimony about grooming would aid lay persons in understanding a child molestation situation. In light of the abundance of evidence pertaining to Chamberlin's training and experience in dealing with child sex abuse victims and her study of the characteristics of child sex abusers, the trial court did not abuse its discretion in permitting her to testify about grooming practices. Appellant's fourth issue is overruled.

*Evidence of Extraneous Offense Admitted at Punishment*

Appellant's second issue involves the admission of evidence during the punishment phase about an incident that occurred in a swimming pool with his female cousin when they were both thirteen years old. The cousin testified that appellant pulled the bottom of her swimsuit to the side and touched her vagina during the episode. Appellant objected to the testimony on the basis that it was too remote in time. On appeal, appellant additionally argues that the evidence was inadmissible under TEX. R. EVID. 403 and 404.

The decision of the trial court to admit extraneous offenses is reviewed under an abuse of discretion standard. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Punishment evidence encompasses any matter the court deems relevant to sentencing, such as the defendant's prior criminal record, general reputation, character, and "any other evidence of an extraneous . . . bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant." TEX. CODE CRIM. PROC. ANN.

8

art. 37.07, § 3(a)(1) (Vernon Supp. 2008).  The Court of Criminal Appeals has said that what is relevant in the punishment phase is a question of "what is helpful to the jury in determining the appropriate sentence." *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

Appellant has waived any objections under Rules 403 and 404 by failing to raise these complaints in the trial court.  TEX. R. APP. P. 33.1(a).  Moreover, specific misconduct evidence is expressly made admissible at the punishment phase of a trial "notwithstanding [Rule] 404." *Sims v. State*, No. PD-1575-07, 2008 WL 2596950, at *4 (Tex. Crim. App. July 2, 2008); Article 37.07, section 3(a)(1).  With respect to appellant's remoteness contention, Article 37.07, section 3(a)(1) does not contain a time restriction on extraneous offenses that are admissible during the punishment phase.  While almost seventeen years had elapsed between the extraneous offense and the charged offenses, we conclude that the trial court did not abuse its discretion in determining that evidence of the extraneous offense was relevant to appellant's sentencing because of the similar ages of the victims.  Appellant's second issue is overruled.

Our conclusion may be incorrect in view of the remoteness of the extraneous offense.  If so, the trial court's error was not of constitutional dimensions.  Nonconstitutional error that does not affect substantial rights must be disregarded.  TEX. R. APP. P. 44.2(b).  After reviewing the entire record, we find that, if the trial court did err in allowing the extraneous offense evidence, the error was harmless.

### This Court's Ruling

The judgment of the trial court is affirmed.


TERRY McCALL

JUSTICE


February 26, 2009

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of:  Wright, C.J.,
McCall, J., and Strange, J.