Opinion filed February 26, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed February 26,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00265-CR 

                                                     __________

 

                              DAVID
ALAN VAN HOUTEN, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 385th District Court

                                                        Midland
County, Texas

                                                 Trial
Court Cause No. CR32754

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
jury convicted David Alan Van Houten[1] of two counts
of sexual assault of a child and two counts of improper relationship between an
educator and a student and assessed his punishment at confinement for a term of
thirteen years in the Institutional Division of the Texas Department of
Criminal Justice on each of the four counts.  The trial court ordered that
appellant=s
thirteen-year sentence for the second count of sexual assault of a child is to
be served consecutively to his thirteen-year sentence for the first count of
sexual assault of a child.  Appellant challenges his convictions and punishment
in four issues.  We affirm.

 








                                                               Background
Facts

Appellant
taught seventh and eighth grade social studies at Midland Academy Charter
School.  The indictment alleged that he engaged in sexual intercourse with AC.C.@ on two occasions.  C.C. was a
fourteen-year-old female student of appellant.  The first occasion is alleged
to have occurred on or about September 26, 2006, and the second occasion
occurred on or about October 16, 2006.[2]  Appellant
does not challenge the sufficiency of the evidence supporting the convictions
for conduct alleged to have occurred on or about September 26, 2006.  However,
he challenges the sufficiency of the evidence supporting the convictions for
the conduct alleged to have occurred on or about October 16, 2006.

Julie
Crosby taught with appellant.  Prior to the start of the school day on October
18, 2006, she entered appellant=s
classroom to confer with him about a school matter.  She observed appellant and
C.C. engaging in a Aromantic
kiss@ on this
occasion.  Crosby subsequently reported her discovery to her superiors who
suspended appellant from teaching on that date.  The school board ultimately
terminated appellant from teaching at the school.

Crosby
and other teachers observed that appellant and C.C. were frequently together on
a daily basis.  Crosby testified that she saw C.C. enter appellant=s classroom several times a
day and that C.C. would eat her lunch in his classroom every day.  Stephanie
Brown testified that C.C. would walk around with appellant every day during his
outside duty assignment each morning.  Crosby and Brown testified that C.C.
would often leave her physical education class to be with appellant.  Diane
Edwards testified that appellant pulled C.C. out of her class on seven
occasions for the purported reason of testing her for the gifted and talented
program at the school.








C.C.
initially denied that the kissing event occurred on October 18, 2006.  She
later agreed with Crosby=s
allegation that she and appellant were kissing.  C.C. testified that she
started Ahanging out@ with appellant during her
seventh grade year.  She stated that she spent every lunch and recess period
with him and that she would skip her other classes to see him.  C.C. testified
that appellant told her that he looked at her as his own daughter.  C.C. and
appellant remained in contact over the summer between her seventh and eighth
grade years because C.C. babysat for him, and they called each other during the
summer break.

C.C.
testified that she and appellant became closer friends after school started
back for her eighth grade year.  C.C. testified that she and appellant engaged
in sexual intercourse on two occasions during her eighth grade year.  The first
occasion occurred on the date of her fourteenth birthday (September 26, 2006)
in appellant=s
classroom.  She testified that the second occasion occurred on a Monday in
October of 2006, presumably on October 16, 2006.  C.C. testified about an
additional episode that occurred between September 26, 2006, and the second
sexual intercourse event that occurred on or about October 16, 2006, wherein
appellant asked C.C. if she Awanted
to try something again.@ 
This intervening episode did not result in sexual intercourse, however, because
C.C. Agot scared.@

Appellant
testified on his own behalf at trial.  He denied having sexual intercourse with
C.C.  He admitted to giving C.C. hugs from time to time and kissing her on the
forehead on occasion.  He also testified that he told C.C. that he thought of
her as a daughter.  With respect to the alleged kissing episode that occurred
on October 18, 2006, appellant testified that he was just giving C.C. a hug
when Crosby entered his classroom.

                                                        Sufficiency
of the Evidence








In
his first issue, appellant challenges the legal sufficiency of the evidence
supporting his convictions for the second count of sexual assault of a child
and second count of engaging in an improper relationship between an educator
and a student.  In order to determine if the evidence is legally sufficient, we
must review all the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App.
2007); Jackson v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  The
jury, as the finder of fact, is the sole judge of the weight and credibility of
the witnesses=
testimony.  Tex. Code  Crim. Proc. Ann.
art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979).  A reviewing court must
give deference to Athe
responsibility of the trier of fact to fairly resolve conflicts in testimony,
to weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.@  Hooper,
214 S.W.3d at 13 (quoting Jackson, 443 U.S. at 318‑19).

Appellant
bases his evidentiary contention on C.C.=s
testimony found at Volume VII, Pages 305-06 of the reporter=s record wherein she stated
that appellant did not place his penis inside of her.  This testimony
references the intervening episode described above that occurred between the
two instances of sexual intercourse described by C.C.  As noted previously,
C.C. testified that appellant engaged in sexual intercourse with her on her
birthday.  C.C. additionally testified about a subsequent episode at Volume
VII, Pages 311-17 of the reporter=s
record when appellant put A[h]is
penis in [her] vagina@
after he told her to pull down her pants and get on the floor.  C.C.=s description of the
subsequent episode of sexual intercourse constitutes legally sufficient
evidence supporting appellant=s
convictions for the second count of sexual assault of a child and the second
count of engaging in an improper relationship between an educator and a
student.  In this regard, the uncorroborated testimony of a child sexual
assault victim alone is sufficient to support a conviction for sexual assault
of a child.  See Tex. Code Crim.
Proc. Ann. art. 38.07(a) (Vernon 2005).  There is no requirement that
physical, medical, or other evidence be proffered to corroborate the victim=s testimony.  Garcia v.
State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); Sandoval v. State,
52 S.W.3d 851, 854 n.1 (Tex. App.CHouston
[1st Dist.] 2001, pet. ref=d). 
Appellant=s first
issue is overruled.

                                                           Victim=s Sexual History

In
his third issue, appellant contends that the trial court erred in not permitting
him to offer evidence of other instances of sexual contact involving C.C.  A
trial court=s decision
to exclude evidence is reviewed under an abuse of discretion standard.  McDonald
v. State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); Willover v. State,
70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  A trial court does not abuse its
discretion as long as the decision to admit evidence is within the Azone of reasonable
disagreement.@  Montgomery
v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).  The appeals court
may not substitute its own decision for that of the trial court.  Moses v.
State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).  If evidence exists
supporting the decision to exclude evidence, there is no abuse of discretion,
and the decision of the trial court will not be reversed.  Osbourn v. State,
92 S.W.3d 531, 537 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at
379.








Tex. R. Evid. 412 is a Arape shield@ law intended to shield a
sexual assault victim from the introduction of highly embarrassing,
prejudicial, and irrelevant evidence of prior sexual behavior. Boyle v.
State, 820 S.W.2d 122, 147‑48 (Tex. Crim. App. 1991), overruled on
other grounds by Gordon v. State, 801 S.W.2d 899, 911 n.13 (Tex.
Crim. App. 1990); Allen v. State, 700 S.W.2d 924, 929 (Tex. Crim. App.
1985).  The admissibility of an alleged victim=s
past sexual behavior is subject to a two‑part test:  (1) the evidence
must fall within one of the five enumerated circumstances in Rule 412(b)(2) and
(2) its probative value must outweigh the danger of unfair prejudice. 
Rule 412(b)(2), (b)(3); Boyle, 820 S.W.2d at 148.  The nurse
examiner who examined C.C. testified that she found irregular hymen edges
indicating that something had penetrated C.C.=s
vaginal opening.  Accordingly, evidence of C.C.=s
previous sexual conduct would possibly have been admissible under Rule
412(b)(2)(A) to rebut or explain the nurse examiner=s findings.  

Appellant
directs us to two instances where the trial court denied his requests to offer
evidence of C.C.=s
previous sexual conduct.  The first instance occurred during the
cross-examination of Wade Cherry, the principal of Midland Academy Charter
School.  Appellant=s
trial counsel advised the trial court that he wanted to ask Cherry about C.C.
purportedly reporting to Cherry that she had been sexually abused prior to her
eighth grade year.  The trial court denied appellant=s request.  However, appellant did not make a
subsequent offer of proof regarding the testimony he sought to elicit from
Cherry.  The failure to make an offer of proof results in a waiver of any error
regarding the excluded evidence.  See Guidry v. State, 9 S.W.3d 133, 153
(Tex. Crim. App. 1999).

Appellant
made an offer of proof with respect to the second instance.  Appellant sought
to  offer testimony from C.C. that she had previously Asnuck out@
of her house to be with a boy.  By its express terms, Rule 412(b) applies to Aevidence of specific
instances of an alleged victim=s
past sexual behavior.@ 
Evidence that appellant snuck out with a boy simply does not equate to evidence
of a specific instance of past sexual behavior.  








We
conclude that the trial court did not abuse its discretion in overruling
appellant=s requests
in the two instances cited by him.  Moreover, we note that the trial court
permitted appellant to offer other evidence pertaining to C.C.=s past sexual conduct. 
Specifically, the trial court permitted appellant to testify that C.C. reported
to him on one occasion that she had been sexually molested  by someone else and
that she believed she may have been pregnant previously.  Appellant=s third issue is overruled.

                                                             Grooming
Testimony

In
his fourth issue, appellant challenges the admission of Agrooming@
testimony from Andra K. Chamberlin.  Chamberlin is the program director
and lead forensic interviewer of Midland Rape Crisis and Children=s Advocacy Center.  She
offered the following testimony regarding grooming:

Q.  
I would like you to now address the issue of a perpetrator grooming a child,
and what that means.

 

A.  
Well, we look for ‑‑

 

Q.  
Is that common?

 

A.  
It is common.  And you can see it in cases where there is what we call
intrafamilial abuse, abuse that occurs in a home between a stepdad, mom,
stepmom and a child.  But I guess the best way to describe grooming is think
about it as dating in a way, because you had that first tentative meeting, so
to speak.  And, you know, when we date, we may eventually kind of have our
shoulders rubbed.  And then we might hold hands.  And then we might put our
arms around the waist.  And  you know, the relationship progresses over a
period of  time until eventually a couple may become, you know, intimate or
something.  But it is a progression.  It=s
not just a one‑act thing.  It is something that occurs where, let me test
and see if you are comfortable with this.  And if you are not comfortable, I=m going to pull back and
say, I=m sorry, I=m sorry, you
misunderstood.  But if you are comfortable, then I=m going to move it to the next level and I=m going to do something
else.  And then that progresses to finally you do have abuse occurring.

 

Q.  
Okay.  And is that normally what a perpetrator would go through?  They wouldn=t initially just go out and
attack a child, if it is someone the child knows?

 

A.  
Well, you know the stories that we hear about in the newspaper unfortunately
are usually the horrific stories of children who are abducted and violently
raped and murdered.  Those are rare, even though we hear it B  those are what we hear
about on the news.  What is common, at least in our community, and what we have
seen at our center, it is again people known to the children that abuse the
kids.  So you have to generally have that grooming in place to keep the kids
quiet.  If it is a one‑time violent assault, generally children are going
to be talking.

 

Q.  
And could this grooming process go on for a long period of time?

 








A.  
It could go on as long as the abuse went on.

 

Q.  
Okay.  Have you seen cases where a grooming process has taken years from actual
initial touching to actual penetration?

 

A.  
Yes.

 

Appellant
argues that Chamberlin was not qualified to offer expert testimony about
grooming.  Tex. R. Evid. 702
provides that, A[i]f
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise.@  No rigid formula exists
for determining whether a particular witness is qualified to testify as an
expert.  Harnett v. State, 38 S.W.3d 650, 658 (Tex. App.CAustin 2000, pet. ref=d). The rule itself
provides that the requisite expertise may be acquired through knowledge, skill,
experience, training, or education. Id. AIt
is almost impossible to lay down any definite guidelines for determining
knowledge, skill or experience required in a particular case or of a particular
witness.@ Id.  

Under
Rule 702, the proponent of scientific evidence must show, by clear and
convincing proof, that the evidence he is proffering is sufficiently relevant
and reliable to assist the jury in accurately understanding other evidence or
in determining a fact issue. Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000) (citing Nenno v. State, 970 S.W.2d 549, 560‑61
(Tex. Crim. App. 1998), overruled on other grounds by State v.
Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999)).  The requirements of
reliability apply with less vigor to fields of study from the soft sciences,
such as the social sciences, or fields that are based primarily upon experience
and training as opposed to the scientific method.  Nenno, 970 S.W.2d at
560.  The reliability of Asoft@ science may be established
by showing that (1) the field of expertise involved is a legitimate one, (2)
the subject matter of the expert=s
testimony is within the scope of that field, and (3) the expert=s testimony properly relies
upon or utilizes the principles involved in that field. Weatherred, 15
S.W.3d at 542 (citing Nenno, 970 S.W.2d at 561).








Appellant
objected to Chamberlin=s
qualifications and expertise at the outset of her testimony.  The trial court
conducted a hearing outside the presence of the jury regarding Chamberlin=s qualifications to
testify.  Chamberlin testified that she has a Bachelor=s Degree in sociology with a minor in
psychology and that she had completed her course work for a Master=s Degree in psychology. 
She has worked in the field of interviewing child abuse victims for eighteen
years, and she has 700 hours of clinical work in the field.  Chamberlin teaches
others about child abuse, and she has been chosen by the Children=s Advocacy Centers of Texas
to design, implement, and evaluate a forensic interview training program for
the State of Texas.  Chamberlin testified that she has extensive firsthand
experience with sexually abused children and that she has an up‑to‑date
knowledge of the professional literature on child sex abuse.  Chamberlin
additionally testified that she has studied the common characteristics of child
molesters and that she is familiar with the concept of the grooming process of
the perpetrator upon a child.  She stated the concept of grooming is
information that is not generally known by the common lay person and that
testimony about grooming would aid lay persons in understanding a child
molestation situation.  In light of the abundance of evidence pertaining to
Chamberlin=s training
and experience in dealing with child sex abuse victims and her study of the
characteristics of child sex abusers, the trial court did not abuse its
discretion in permitting her to testify about grooming practices.  Appellant=s fourth issue is
overruled.

                                Evidence
of Extraneous Offense Admitted at Punishment

Appellant=s second issue involves the
admission of evidence during the punishment phase about an incident that
occurred in a swimming pool with his female cousin when they were both thirteen
years old.  The cousin testified that appellant pulled the bottom of her
swimsuit to the  side and touched her vagina during the episode.  Appellant
objected to the testimony on the basis that it was too remote in time.  On
appeal, appellant additionally argues that the evidence was inadmissible under Tex. R. Evid. 403 and 404.  








The
decision of the trial court to admit extraneous offenses is reviewed under an
abuse of discretion standard. Ellison v. State, 86 S.W.3d 226, 227 (Tex.
Crim. App. 2002); Powell v. State, 63 S.W.3d 435, 438 (Tex. Crim. App.
2001).  Punishment evidence encompasses any matter the court deems relevant to
sentencing, such as the defendant=s
prior criminal record, general reputation,  character, and Aany other evidence of an
extraneous . . . bad act that is shown beyond a reasonable doubt by evidence to
have been committed by the defendant.@ 
Tex. Code Crim. Proc. Ann.
art. 37.07, '
3(a)(1) (Vernon Supp. 2008).  The Court of Criminal Appeals has said that what
is relevant in the punishment phase is a question of Awhat is helpful to the jury in determining the
appropriate sentence.@ 
Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

Appellant
has waived any objections under Rules 403 and 404 by failing to raise these
complaints in the trial court.  Tex. R.
App. P. 33.1(a).  Moreover, specific misconduct evidence is expressly
made admissible at the punishment phase of a trial Anotwithstanding [Rule] 404.@  Sims v. State,
No. PD-1575-07, 2008 WL 2596950, at *4 (Tex. Crim. App. July 2, 2008); Article
37.07, section 3(a)(1).  With respect to appellant=s remoteness contention, Article 37.07,
section 3(a)(1) does not contain a time restriction on extraneous offenses that
are admissible during the punishment phase.  While almost seventeen years had
elapsed between the extraneous offense and the charged offenses, we conclude
that the trial court did not abuse its discretion in determining that evidence
of the extraneous offense was relevant to appellant=s sentencing because of the similar ages of
the victims.  Appellant=s
second issue is overruled.

Our
conclusion may be incorrect in view of the remoteness of the extraneous
offense.  If so, the trial court=s
error was not of constitutional dimensions.  Nonconstitutional error that does
not affect substantial rights must be disregarded.  Tex. R. App. P. 44.2(b).  After reviewing the entire record,
we find that, if the trial court did err in allowing the extraneous offense
evidence, the error was harmless.

                                                               This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

 

TERRY McCALL

JUSTICE

 

February 26,
2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We note that appellant=s
last name is spelled AVan Houten@ and
AVanhouten@
throughout the record.





[2]The two counts of sexual assault of a child alleged
that appellant caused the penetration of C.C.=s
sexual organ with his sexual organ on or about September 26, 2006, and on or
about October 16, 2006.  Tex. Penal Code
Ann. ' 22.011(a)(2)(A) (Vernon Supp. 2008).  The two counts
of improper relationship between an educator and a student alleged that he
engaged in sexual intercourse with C.C. on both of these dates.  Tex. Penal Code Ann. ' 21.12(a)(1) (Vernon Supp. 2008); see Tex. Penal Code Ann. ' 21.01(3) (Vernon Supp. 2008).  In this regard, Tex. Penal Code Ann. ' 21.12(c) (Vernon Supp. 2008) provides that, A[i]f conduct constituting an offense under this section
also constitutes an offense under another section of this code, the actor may
be prosecuted under either section or both sections.@