

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00289-CR

RAJENDRA KISSOON                                         APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Rajendra Kissoon appeals his conviction for indecency with a child by contact.  *See* Tex. Penal Code Ann. § 21.11(a)(1) (West 2011).  In three issues, Kissoon argues that the trial court erred by excluding testimony about the complainant's past sexual behavior.  We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

Amanda B. was born in January 1992.[2] Sometime around September 1999, when Amanda was seven years old, she and her family moved into an apartment located in Tarrant County. Kissoon, Amanda's step-father's cousin, whom Amanda referred to as "Uncle Billy," lived in a nearby apartment complex.

Kissoon had a pool behind his apartment, and Amanda and her younger brother, and sometimes just Amanda, would go over to Kissoon's apartment to swim at the pool, play video games, hang out, and spend the night. When Amanda and her brother stayed overnight, she slept in Kissoon's bed with him and her brother slept on the couch. On more than five but less than ten occasions, when Amanda spent the night in Kissoon's bed with him, he "hoist[ed]" her up on top of him and moved her back and forth on his erect penis until he ejaculated.[3] Kissoon also made her perform oral sex on him.[4]

Amanda kept the molestation a secret for years, until December 2007, when she was a sophomore in high school. Amanda had made good grades during her freshman year, but the following fall, she became depressed,

---

[2]At trial, Amanda agreed to waive the use of a pseudonym in place of her real name.

[3]Both were clothed; Kissoon wore sweat pants and a T-shirt, and Amanda wore a T-shirt and underwear.

[4]Amanda confirmed that these things happened when she and her family were living in the apartment that was located near Kissoon's apartment. They moved out of that apartment and into a house in the spring of 2001.

2

communicated with her family less, lost weight, began cutting and pinching herself, started skipping school, and lied to her mother about skipping school. On December 18, 2007, Amanda "gave up" and told her mother about the molestation. She continued to be depressed thereafter and also learned that her stepfather was not her biological father.

Eventually, in May 2008, Amanda was referred to Cook Children's Medical Center due to concerns about suicidal ideation. The examiner concluded that Amanda was depressed and required inpatient hospitalization. Amanda was transferred to Millwood Hospital, where she stayed for a week and was treated by Dr. Rupinder Bhatia, the attending physician.

Ultimately, in addition to indecency with a child, a grand jury indicted Kissoon with four counts of aggravated sexual assault of a child. At trial, Dr. Bhatia testified that when he treated Amanda, he did not have any indication that she was malingering and did not observe any signs of "secondary gain" on her part. Dr. Bhatia described malingering as "faking symptoms," and he agreed that secondary gain was like "a motive" to malinger.

Among other witnesses, Kissoon called Rene Ortiz to testify. Before Ortiz testified, Kissoon notified the trial court that he intended to elicit testimony from Ortiz that Ortiz "did have sex with Amanda and that on one or more occasions she performed oral sex on him and that he is her boyfriend." The State objected that the proffered testimony was inadmissible under rule of evidence 412, and the trial court sustained the objection. Ortiz proceeded to testify that he and

Amanda had dated during part of the time that they attended the same high school, that she had told him that she had been sexually abused by her "uncle," and that she had been physically abused by her stepfather. At the conclusion of Ortiz's testimony, but outside the presence of the jury, the trial court permitted Kissoon to develop the testimony about Ortiz's sexual relationship with Amanda. Ortiz testified that he and Amanda had sent each other sexually-oriented text messages, that she had performed oral sex on him, and that they had sex. The trial court declined to change its earlier ruling sustaining the State's rule 412 objection.

A jury convicted Kissoon of the indecency offense but acquitted him of the four aggravated-sexual-assault allegations. The jury assessed Kissoon's punishment at seven years' confinement but recommended that he be placed on community supervision. The trial court accordingly sentenced Kissoon to seven years' confinement but suspended imposition of the sentence and placed him on community supervision for ten years.

### III. SPECIFIC INSTANCES OF PAST SEXUAL BEHAVIOR

All three of Kissoon's issues challenge the propriety of the trial court's ruling excluding the evidence about Amanda's past sexual behavior with Ortiz.

We review a trial court's decision to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court does not abuse its discretion as long as the decision to exclude the evidence is within the zone of reasonable disagreement.

4

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

Rule of evidence 412 governs the admissibility of a complainant's prior sexual relationships with third parties in a sexual assault case. Tex. R. Evid. 412. Rule 412(b) provides in relevant part as follows:

> In a prosecution for sexual assault or aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual behavior is also not admissible, unless:
>
> . . .
>
> (2)  it is evidence:
>
> (A)   that is necessary to rebut or explain scientific or medical evidence offered by the State;
>
> . . .
>
> (C)   that relates to the motive or bias of the alleged victim; [or]
>
> . . .
>
> (E)   that is constitutionally required to be admitted; and
>
> (3)  its probative value outweighs the danger of unfair prejudice.

Tex. R. Evid. 412(b). The rationale behind the rules is that evidence of a complainant's

> prior sexual activity is of dubious probative value and relevance and is highly embarrassing and prejudicial. Often such evidence has been used to harass the prosecuting victim. Sponsors of these statutes assert that they encourage victims of sexual assault to

5

report the crimes without fear of having their past sexual history exposed to the public.

*Allen v. State*, 700 S.W.2d 924, 929 (Tex. Crim. App. 1985) (quoting *Bell v. Harrison*, 670 F.2d 656, 658 (6th Cir. 1982)).

### A.    Rule 412(b)(2)(A)

In his first issue, Kissoon argues that the trial court erred by excluding the evidence about Amanda's past sexual behavior with Ortiz because it was necessary to rebut Dr. Bhatia's testimony that Amanda was not malingering and did not have a secondary gain.  *See* Tex. R. Evid. 412(b)(2)(A).  Kissoon directs the court to the portion of Amanda's testimony where she confirmed that Kissoon was "the only person who did these things to" her and states that Amanda "denied *ever* having any *sexual contact* when she was asked about it in direct examination."   [Emphasis added.]   Kissoon also points out that Amanda (1) denied "sexual activity" when she completed the medical forms at Cook Children's Medical Center and (2) "lied" about having sex with Ortiz when she was treated at Millwood Hospital because her medical records from there indicated that she was not "sexually active."   Kissoon's argument founders for several reasons.

Assuming that Dr. Bhatia's testimony concerned scientific or medical evidence, Kissoon's argument appears to improperly conflate evidence of sexual abuse with evidence that Amanda engaged in sexual behavior or contact unassociated with Kissoon's molestation of her.  Specifically, the record reflects

6

that when Dr. Bhatia testified about the absence of malingering and secondary gain, he was conveying his opinions about the statements that Amanda had made to him regarding the *sexual abuse* of her by Kissoon; he was not opining about the absence of malingering and secondary gain regarding any statements that Amanda made about whether she had been *sexually active*.

Indeed, immediately before the questioning about malingering, Dr. Bhatia testified that Amanda exhibited symptoms that were associated with someone who had been sexually abused, that it was not uncommon for outcries to occur years after the sexual abuse happened, that he had dealt with adults who had suffered from the effects of sexual abuse as a child, and that an adult's memory may not recall every detail of the sexual abuse that occurred when the adult was a child. Dr. Bhatia even specifically referenced the "abuse" when discussing secondary gain. This distinction between sexual abuse and sexual activity is significant because evidence that Amanda had been sexually active with Ortiz when she was in high school would not have rebutted Dr. Bhatia's testimony about the absence of malingering and secondary gain regarding Amanda's statements about the sexual abuse. In fact, the record contains no evidence that Amanda ever told anyone that she had not been sexually abused.

Alternatively, Kissoon's argument may be that he could have rebutted Dr. Bhatia's testimony regarding the absence of malingering and secondary gain in Amanda's statements about sexual abuse had he been able to demonstrate through Ortiz's excluded testimony that Amanda was somehow less than

7

forthright when she testified about her history of sexual activity and when she was evaluated at Cook Children's Medical Center and Millwood Hospital. In other words, the argument is that if Amanda was evasive or untruthful about one matter (sexual activity), then *maybe* she was evasive or untruthful about another matter (speaking about the sexual abuse with Dr. Bhatia). The record does not support this argument, and to the extent that it does, the evidence was inadmissible.

First, it is apparent that when Amanda testified that Kissoon was "the only person who did *these things* to" her, she was referring to the sexual abuse of her by Kissoon, not her participation in sexual activity or sexual contact unassociated with the sexual abuse. [Emphasis added.] As explained already, we decline to conflate evidence of sexual abuse with evidence that Amanda engaged in sexual behavior or contact unassociated with Kissoon's molestation of her.

Kissoon claims that the medical records from Cook Children's Medical Center indicate that Amanda denied "sexual activity," but we are unable to locate anything to that effect either in the exhibit or in the testimony of the individual who examined Amanda.

Regarding the notation in the Millwood Hospital records that Amanda was "LM - 5/10 not sex[ually] active UCG⊖," Dr. Bhatia explained that this meant

8

Amanda's last menstrual period was May 10, that she reported not being sexually active, and that her urinary pregnancy test was negative. But as the State observes, there is nothing in the medical records or in Dr. Bhatia's testimony about the medical records from which we can determine the context in which the answer was given. Kissoon did not develop the evidence on the matter, although he questioned Amanda and could have recalled her, and we are left to speculate about the circumstances surrounding the notation.

Nonetheless, to the extent that the notation in the Millwood Hospital records that Amanda was not sexually active could have been construed to mean that Amanda "lied" about having sex with Ortiz, as Kissoon urges, the connection that Kissoon attempts to draw between this evidence and Dr. Bhatia's testimony regarding the absence of malingering and secondary gain in Amanda's statements about sexual abuse—i.e., that if Amanda was evasive or untruthful about her sexual activity, then maybe she was evasive or untruthful when she spoke about the sexual abuse with Dr. Bhatia—is far too tenuous to not fall within the scope of rule 412's general rule of exclusion. *See Allen*, 700 S.W.2d at 929. At a minimum, the trial court could have reasonably concluded that the probative value of admitting Ortiz's testimony for that purpose would have been outweighed by the danger of unfair prejudice to the State. *See* Tex. R. Evid. 412(b)(3).

9

We hold that the trial court did not abuse its discretion by excluding Ortiz's testimony in light of Kissoon's rule-412(b)(2)(A) argument. Accordingly, we overrule Kissoon's first issue.

**B.     Rule 412(b)(2)(C)**

In his second issue, Kissoon argues that the trial court erred by excluding the evidence about Amanda's past sexual behavior with Ortiz because Amanda had a motive to lie about the sexual abuse. *See* Tex. R. Evid. 412(b)(2)(C). Kissoon points out that unlike during Amanda's freshman year when she was an exemplary student, during her sophomore year, she made bad grades, skipped classes, and lied to her mother, her stepfather, and the treating facilities about her relationship with Ortiz. According to Kissoon, by "[f]alsely claiming to be a victim" of sexual abuse, Amanda was able to "deflect her parents' and society's scrutiny and continue her inappropriate behavior."

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). A reviewing court should

not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Clay*, 361 S.W.3d at 765.

Kissoon advised the trial court that Ortiz's testimony about Amanda's prior sexual behavior was admissible for the following reasons:

- "First of all, they [the State] have opened the door.  They have put the records in.  In the direct of the treating psychiatrist, an expert at Millwood, those medical records specifically had questions of her as to whether or not she was sexually active.  And so I think we're entitled to rebut that."

- "Second of all, I think it's clear from the manner in which they questioned Amanda that they're going to argue and/or have tried to create in the mind of jurors some belief that the only reason she's able to describe or knows about the specific act of sexual -- oral sexual performance that she described is because of her experience with Mr. Kissoon.  And I think we're entitled to confront her and create the misimpression that she's made under Crawford v. Washington."

- "If I can develop that he knows by means other than by sexual contact, for example, if they talked about it or if they watched or she texted him references, specific references to oral sex?"

- "At some point I would like to -- I don't know what his answers are to those, so I can't make a proffer.  But as the Court is aware of the previous case, there was at least one sexually explicit text that Amanda received in regards to oral sex.  We have a witness that can testify to that.  Yvonne, the grandmother testified about that.  That was hearsay, so it wasn't allowed in.

- "The father showed the grandmother the daughter's computer.  The State objected and the jury didn't hear about that.  But, I mean, there is a good faith -- this isn't a fishing expedition.  There's a good faith belief that this girl clearly had those types of communication."

At no point did Kissoon urge the argument that he now raises on appeal, nor was the argument apparent from the context of the assertions that he expressly made. Because Kissoon raises this argument for the first time on appeal, we hold that he failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a)(1). We overrule Kissoon's second issue.

### C. Rule 412(b)(2)(E)

In his third point, Kissoon argues that the trial court erred by excluding the evidence about Amanda's past sexual behavior with Ortiz because the evidence was constitutionally required to be admitted under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.[5] *See* Tex. R. Evid. 412(b)(2)(E).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, the right to confront and cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. *Allen*, 700 S.W.2d at 931. The Constitution requires only the introduction of otherwise

---

[5]Kissoon's due process argument does not contain any citations to any relevant authorities. This portion of his third issue is therefore waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i); *see also Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) ("It is incumbent upon counsel to cite specific legal authority and to provide legal argument based upon that authority.").

relevant and admissible evidence. *See Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd).

Just like in his first issue, Kissoon directs us to the portion of Amanda's testimony in which she confirmed that Kissoon was "the only person who did these things" to her. Kissoon argues that because Amanda "lied about her sexual history," Ortiz's testimony that he engaged in sexual activity with Amanda should have been admitted to protect Kissoon's rights under the Sixth Amendment.

Kissoon's argument is premised upon an erroneous interpretation of an unambiguous part of the record. As we explained in the first issue, when Amanda testified that Kissoon was "the only person who did *these things* to" her, she was referring to the acts of sexual abuse committed by Kissoon upon her; she was not making some sort of comprehensive declaration that she had never participated in sexual activity or sexual contact unassociated with the sexual abuse. [Emphasis added.] Further, to the extent that Kissoon relies upon the notation in the Millwood Hospital record to support his argument that Amanda "lied" about being sexually active, we have already addressed that contention in the first issue, and our opinion remains unchanged, even in light of Kissoon's Confrontation-Clause argument.

Kissoon argues that *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105 (1974), supports his argument. There, the trial court prohibited the defendant from questioning a State's witness about being on probation when the witness

13

identified the defendant. *Id.* at 309–11, 94 S. Ct. at 1107. The Supreme Court held that the defendant should have been permitted to question the witness about his status as a probationer for the limited purpose of showing that the witness was potentially biased in making the identification of the defendant. *Id.* at 316–17, 94 S. Ct. at 1110–11. *Davis* is distinguishable because, unlike in this case, the petitioner there did not misconstrue the portion of the record upon which his argument was based, and the Supreme Court concluded that the probative value of admitting the evidence outweighed the State's interest in protecting the anonymity of the probationer as a juvenile offender. *Davis* also did not involve the admissibility of a sexual abuse victim's prior sexual history.

We hold that the trial court did not abuse its discretion by excluding Ortiz's testimony, and we overrule Kissoon's third issue.

## IV. CONCLUSION

Having overruled Kissoon's three issues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DAUPHINOT, J., dissents without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 29, 2013

14